**Joe Sidney WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–87–196–CR.**

Court of Appeals of Texas,
Waco.

Oct. 14, 1992.

Discretionary Review Refused
Dec. 9, 1992.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

This court affirmed Appellant's capital murder conviction in an unpublished opinion. However, the Court of Criminal Appeals remanded the case for our reconsideration of Appellant's first point of error because we did not give "substance" to the requirement of Rule 801(e)(2)(E) that coconspirators' statements be made not only "during the course" but also "in furtherance of" the conspiracy. *See* Tex.R.Crim. Evid. 801(e)(2)(E); *Williams v. State,* 790 S.W.2d 643 (Tex.Crim.App.1990). After remand, we reconsidered Appellant's first point of error and held that the statements were not made "in furtherance of" the conspiracy, and so were not exempted from the hearsay classification under Rule 801(e)(2)(E), but were nevertheless properly admitted under the exception to the hearsay rule allowing statements against interest. *See* Tex.R.Crim.Evid. 801(e)(2)(E), 803(24); *Williams v. State,* 815 S.W.2d 743 (Tex.App.—Waco 1991), *rev'd,* 829 S.W.2d 216 (Tex.Crim.App.1992). The Court of Criminal Appeals reversed the judgment, holding that "the question of whether the statement was admissible under Rule 803(24) was not properly before the Court of Appeals" and that our endeavor to analyze the admissibility of the statement in the context of Rule 803(24) "stepped outside the scope of [the] remand order"[1]; it then remanded the case to us for a harm analysis under Rule 81(b)(2). *See* Tex.

Walter Reaves, Jr., West, for appellant.

John W. Segrest, Crim. Dist. Atty., E. Alan Bennett, Tanya S. Dohoney, Asst. Dist. Attys., Waco, for appellee.

---

1. We understand the rule to be that stated in *Garrett v. State,* 749 S.W.2d 784, 787 (Tex.Crim. App.1986):

 When the judgment of this Court reversing the judgment of [the] court of appeals and remanding the cause to that court becomes final, this Court has relinquished its review jurisdiction in the cause.... No order instructing the court of appeals to exercise its jurisdiction, power and authority is necessary for it to proceed to decide the direct appeal.... Indeed, an "order" that the court of appeals "consider appellant's grounds of error" in a criminal case is superfluous, for such is its function, and according to Article 40.09, § 9 on direct appeal an appellate court is obliged to consider every ground of error it can "identify and understand".... [F]or this Court to issue an "order of remand" to restrict the court of appeals in renewed exercise of its own jurisdiction, power and authority would seem to be an impermissible and unwarranted abridgement of the constitutional grant of same to courts of appeals by Article V, § 6,

R.App.P. 81(b)(2); *Williams,* 829 S.W.2d at 217.

## COCONSPIRATORS' STATEMENTS

We have determined that the State failed to establish that Washington's statements were admissible under Rule 801(e)(2)(E) as being made in furtherance of the conspiracy. *See* Tex.R.Crim.Evid. 801(e)(2)(E); *Williams,* 815 S.W.2d at 744–47.

## WAS THE ERROR HARMLESS?

 Because we find error, we must reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *See* Tex.R.App.P. 81(b)(2). In applying this rule, we focus not on the propriety of the trial's outcome but on the integrity of the process leading to the conviction. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). We examine the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. *See id.* We first isolate the error and all its effects, using these considerations and any other considerations suggested by the facts of the case. *See id.* at 588. We consider how much weight a juror would probably place on the error and ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *See id.*

 The record reveals that twenty-six witnesses testified for the State. Six of these were in-laws, neighbors, and co-workers of the victim, who testified to events occurring before she arrived at home or after her death. Nine were investigators and technicians who testified about the investigation and the samples, fingerprints, and physical evidence gathered at the scene and elsewhere. The medical examiner testified about the cause of death. The grand jury foreman testified that no evidence was presented to the grand jury about the means used to murder the victim. Eight of Williams's "friends" and fellow inmates testified, all of whom had prior felony convictions and/or charges pending. One, Waymon Dotson, testified that Williams had implicated himself in Mrs. White's death, but on cross-examination admitted that he had given a written statement in which he stated that Williams had told him that he did not kill her. The eighth "friend," Booker Sterling, related the conversation between Calvin Washington and an unidentified female. One expert, a forensic odontologist, testified that Williams's dentition was consistent with the injury (bite mark) on the deceased. On cross-examination, the expert said, "I did not say that to a reasonable certainty or a positive certainty that [Williams] did it."

Nine witnesses testified for the defense, including four reputation witnesses who stated that one or more of the State's witnesses had a bad reputation for truth and veracity. Three were Williams's "friends," who said that Williams did not talk to a particular State's witness in jail. Williams's expert, a forensic dentist, excluded Williams as a possible maker of the bite mark. The last defense witness, the son of the victim, testified that Mrs. White did not own certain property that the testimony showed Williams and Washington were trying to sell on the night of the murder.

Thus, the only testimony connecting Williams with the murder came from Waymon Dotson, who was subject to impeachment by his prior written statement; Booker Sterling, Washington's cousin, who related the conversation that we have held to be inadmissible; and the State's expert who said the bite mark was consistent with his dentition. Contrary testimony was heard from the three witnesses produced by the State who testified that Williams told them he did not commit the offense, that Calvin did, and from the defense ex-

---

Constitution of Texas, as implemented by Articles 4.03, 44.24 and 44.25, V.A.C.C.P.

*See also Adkins v. State,* 764 S.W.2d 782, 784 (Tex.Crim.App.1988).

pert who excluded Williams from the group who could have left the bite mark.

The jury could have reasonably considered Sterling's testimony about the conversation between Washington and the unidentified female as bolstering the testimony of Waymon Dotson, who had been impeached by his prior written statement. In that statement, Dotson had said, "[Williams] said he didn't kill the woman, that Calvin did." Considering the questionable credibility and veracity of the State's jail-house witnesses, we cannot say beyond a reasonable doubt that the error in admitting Washington's statements, when they were not made in furtherance of the conspiracy, did not contribute to Williams's conviction or punishment. *See id.;* TEX.R.APP.P. 81(b)(2).

## CONCLUSION

We hold that the trial court erred in admitting Washington's declarations as co-conspirator's statements, reverse the judgment, and remand the cause for further proceedings. *See id.*

Reversed and remanded.