**Roosevelt YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–89–183–CR.**

Court of Appeals of Texas,
Waco.

Oct. 30, 1992.

---

Walter M. Reaves, Jr., West, for appellant.

John W. Segrest, Crim. Dist. Atty., Thomas C. West, Asst. Dist. Atty., Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON REMAND

THOMAS, Chief Justice.

This court affirmed Young's conviction in a published opinion. *See Young v. State*, 803 S.W.2d 335 (Tex.App.—Waco 1990). However, the Court of Criminal Appeals vacated our judgment and remanded the case to us for a harm analysis under rule 81(b)(2). *See Young v. State*, 830 S.W.2d 122 (Tex.Crim.App.1992); Tex.R.App.P. 81(b)(2). We affirm the conviction.

## THE OFFENSE

After receiving a tip that a burglary was in progress at Billy's Bar, three officers discovered that the "burglar bars" covering the front doors, which were usually secured by a padlock and chain, were partially open. The twisted padlock was lying outside of the doors along with several screws that had attached a metal strip to the two front doors. Lying on the floor immediately inside the front doors was a "tire iron" and a metal strip.

The officers searched the darkened interior of the bar. Finding a door to the men's bathroom locked, they suspected that someone was inside. They identified themselves as officers, told whomever was in the bathroom to come out, but received no reply. Finally, they forced open the door and found Young crouching beside the toilet. He was wearing two gloves on his left hand, pliers were found in his hip pocket, and a screwdriver was lying on the floor nearby. Officers also discovered a plastic garbage bag filled with unopened beer and liquor bottles in a trash can behind the bar's counter. Sitting on top of the counter were a twelve-pack of beer and unopened liquor bottles.

Leotia Howard, whose deceased husband owned Billy's Bar when the burglary occurred, testified that Young did not have permission to enter the bar on March 31, 1988, when it was not open to the public. Young did not testify but called John Berry as a witness. Berry testified that in March 1988 he, Young, and another man had remodeled the bar's interior. He claimed that the remodeling was supervised by Henry Harris, who had keys to the bar, and that Young sometimes remained inside the bar when it was closed.

Mrs. Howard, who also kept the accounting books for Billy's Bar, further testified that she had reviewed the books, and that no construction work was in progress at the bar on the date of the burglary. Furthermore, she claimed that the records did not reflect that Young was ever hired to do any work at the bar. Young requested to review the records. However, the court erroneously denied his request. It is on this error that we were instructed by the Court of Criminal Appeals to do a harm analysis.

## HARM ANALYSIS

Even though the refusal to allow Young's counsel to examine the records reviewed by Mrs. Howard before she testified resulted in error, no harm occurred. Analysis of harmless error under Rule 81(b)(2) does not require the court to ignore the overwhelming, untainted evidence of the defendant's guilt. In fact, the analytical process requires otherwise:

As noted, Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. Irrespective of the focus of the inquiry, it is impossible to gauge the significance of the error apart from the remaining properly admitted evidence. This approach obviously implicates a review of the evi-

dence, but the concern is solely to trace the impact of the error. The untainted evidence is not to be weighed in its own right, nor is it to be examined to see if it is cumulative with the tainted evidence; it is to be considered only to uncover the potentially damaging ramification of the error. In other words, the impact of the error cannot be properly evaluated without examining its interaction with the other evidence.

*Harris v. State*, 790 S.W.2d 568, 585–86 (Tex.Crim.App.1989). Overwhelming evidence of guilt can dissipate an error to the extent that it could not have affected the jury's verdict on guilt or punishment. *Id.* at 587. Essentially, after isolating the error and viewing it against the backdrop of all of the evidence, the question is whether a rational fact-finder might have reached a different result if the error and its effects had not resulted. *Id.* at 588.

■ Even if the books showed that Young was employed to remodel the bar and that he sometimes stayed at night, could a jury reasonably find him not guilty? To return a not-guilty verdict, the jury would have to totally disregard the overwhelming evidence that is consistent with Young being in the bar illegally. He was locked inside a bathroom in the darkened interior of the bar. Police had to force open the door to arrest him. He was in possession of tools that could have been used to break through the front doors of the bar. Evidence of the entry through the front doors is wholly inconsistent with a legal entry of the building. Moreover, evidence that liquor and beer bottles were in a plastic sack inside a trash can is consistent with police having interrupted a burglary in progress.

When placed in the context of the entire record—which includes overwhelming evidence that Young was guilty of burglary of the building—the assumed error would have been harmless beyond a reasonable doubt. To conclude otherwise would ignore the reality of the record. Affirmed.

VANCE, Justice, dissenting.

For the first time this court has utilized the concept of "overwhelming evidence" of guilt to determine that an error did not harm the defendant.

Although *Harris v. State* appears to support the concept, the opinion itself warns against its use:

In performing a harmless error analysis the easiest and consequently the most convenient approach one could employ is to determine whether the correct result was achieved despite the error [footnote omitted]. Or, notwithstanding the error, in light of all the admissible evidence was the fact finder's determination of guilt clearly correct? Stated another way, was there overwhelming evidence of guilt that was not tarnished by the error? *This approach is incorrect because the language of the rule focuses upon the error and not the remaining evidence.* Thus, it logically follows that the inherent difficulty with such an evaluation is that in applying only that standard the appellate court necessarily envisages what result it would have reached as a trier of fact, thereby effectively substituting itself for the trial court or the jury.

*Harris v. State*, 790 S.W.2d 568, 585 (Tex. Crim.App.1989) (emphasis added).

Later opinions of the Court of Criminal Appeals are instructive about the "overwhelming evidence" concept. In *Higginbotham v. State*, the Court elaborated on *Harris* and said:

In addition, the Court pointed out that standards for the determination of harmless error *such as the "overwhelming evidence of guilt" test and the "correct result" test have been rejected by this Court.*

*Higginbotham v. State*, 807 S.W.2d 732, 734 (Tex.Crim.App.1991) (emphasis added). And, in *Anderson v. State* the Court said:

Tex.R.App.Proc. 81(b)(2) mandates that we reverse the judgment under review unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. In *Harris v. State*, 790 S.W.2d 568 (Tex.Cr.App.1989), we articulated a coherent standard for determining when an error is harmless. *We do not deter-*

*mine harmlessness simply by examining whether there exists overwhelming evidence to support the verdict of guilt,* but rather calculate as much as is possible the probable impact of the error on the jury in light of the existence of the other evidence.

. . .

It is the effect of the error *and not the existence of overwhelming evidence* or the lack thereof that dictates our judgment.

*Anderson v. State,* 817 S.W.2d 69, 72–73 (Tex.Crim.App.1991) (emphasis added).

Even if we were permitted to assess the "overwhelming evidence," I do not agree that we could in this case. The Court of Criminal Appeals has determined that the court "erred in denying Young's request for and motion to produce 'records [a prosecution witness] reviewed prior to her testimony for purpose of impeachment.'" *See Young v. State,* 830 S.W.2d 122, 124 (Tex. Crim.App.1992). Because the records were not produced, we can only speculate about what would have happened if counsel had been given access to them during the trial. To determine that the evidence of guilt was overwhelming, we must speculate that the records would not have assisted counsel in cross-examining the witness and that they contained nothing that would have supported Young's position. To my mind, a determination beyond a reasonable doubt that the error did not contribute to Young's conviction or punishment should not be based on speculation. Thus, I dissent.