**James Andrew FAIROW, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–94–01083–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 15, 1996.

Discretionary Review Refused May 29, 1996.

---

Allen C. Isbell, Dennis Uates, Houston, for appellant.

John B. Holems, Jr., William J. Delmore, Joseph S. Owmby, Houston, for appellee.

Before HUTSON–DUNN, MIRABAL and HEDGES, JJ.

## OPINION

HUTSON–DUNN, Justice.

A jury found James Andrew Fairow guilty of capital murder and sentenced him to confinement for life. We affirm.

### Fact Summary

Appellant, Deryk Middleton, Gary Mosby, and Andre Mosley stormed a nightclub one evening in order to rob its patrons. While other robbers took the patrons' money, appellant vaulted the bar and attempted to empty the cash register. The club's proprietor, Joseph Young, attacked appellant to prevent him from doing so. During the scuffle, appellant tried to fire his gun, but it was out of bullets. Young was knocked to the ground. Mosby gave appellant another gun,

and appellant struck Young in the head with it when Young attempted to resume fighting. Young still continued to fight, and appellant began to wrestle with the slide of his new gun, as if it had jammed and he was trying to unjam it. Appellant then struck Young with the gun again. During this time, Mosby obtained a gun from Mosley. While Young was falling from the last of appellant's blows, Mosby shot Young in the chest, killing him.

## Point of Error One

In his first point of error, appellant contends the trial judge erred by excluding "evidence of Deryk Middleton's opinion concerning whether Gary Mosby intentionally caused the death of Joseph Young." Appellant's trial counsel asked Middleton whether Mosby intentionally shot Young.[1] The prosecutor objected on the grounds that the question "calls for a conclusion" and "calls for speculation." The judge sustained the objection.

This ruling is significant to appellant because the jury was instructed on the law of parties and was asked to choose among finding appellant not guilty, guilty of capital murder, guilty of felony murder, or guilty of aggravated robbery. The jury, as noted above, found appellant guilty of capital murder. Had the jury concluded that Mosby did not *intentionally* cause Young's death, the jury could not have properly found appellant guilty of capital murder, because that crime requires that the death be caused "intentionally or knowingly." *See* TEX.PENAL CODE ANN. § 19.03(a) (Vernon 1994) (pronouncing that a person must have caused the death "intentionally or knowingly" to have committed capital murder). Instead, the jury could have, at most, found appellant guilty of felony murder, which does not include as a necessary element that the victim's death be caused "intentionally or knowingly." *See* TEX.PENAL CODE ANN. § 19.02(b)(3) (Vernon 1994).

■ We agree with the judge that the question called for speculation and was therefore improper. Middleton could not properly testify whether Mosby, at the time

Mosby shot Young, had the culpable mental state necessary to convict appellant of capital murder, which requires an intentional killing, rather than felony murder, which does not.

In *Klein v. State*, 662 S.W.2d 166 (Tex. App.—Corpus Christi 1983, no pet.), the court considered a similar question. The prosecutor asked a lay witness whether the defendant had intentionally rammed the witness' boat with the boat the defendant was operating:

Q. In your opinion was this an intentional act?

A. Yes.

*Id.* at 168. The court held that the question asked for an opinion "of [the defendant]'s culpable mental state (i.e., intent)," and was thus improper. *Id.*

Likewise, in *Taylor v. State*, 774 S.W.2d 31 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd), the court held that it was error to admit testimony of the witness' opinion "of [the defendant]'s culpable mental state[.]" *Id.* at 34. We agree with the principles of *Klein* and *Taylor*.

The question here required Middleton to look into Mosby's mind and determine whether Mosby actually meant to shoot Young. Because Middleton could not possibly know what was in Mosby's mind at the time of the shooting, Middleton's answer would have been mere speculation and thus improper.

Appellant relies on Texas Rules of Criminal Evidence 701 and 704 and *Young v. State*, 803 S.W.2d 335 (Tex.App.—Waco 1990), *judgment vacated and cause remanded for harm analysis*, 830 S.W.2d 122 (Tex.Crim. App.1992), *conviction aff'd*, 840 S.W.2d 785 (Tex.App.—Waco 1992), *rev'd and remanded for new trial*, 891 S.W.2d 945 (Tex.Crim.App. 1994). None of these authorities aid appellant.

■ Rule 701 allows opinion testimony by a lay witness, but only if the testimony is "helpful to a clear understanding of his testimony or the determination of a fact in issue."

---

1. At various junctures in his cross-examination of Middleton, counsel used the terms "intentionally," "knowingly," and "on purpose," in asking Middleton whether he believed Mosby meant to shoot Young.

TEX.R.CRIM.EVID. 701. A *speculative* opinion, such as an opinion on what someone else was thinking at a specific time, does not help the jury to either (1) understand the witness' testimony better, or (2) decide the question of the other person's intent. Mere conjecture does not assist the jury.

■ Rule 704 states that "[t]estimony in the form of an opinion ... *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." TEX.R.CRIM.EVID. 704 (emphasis added). The opinion testimony here was not "otherwise admissible," because it would have been speculation.

The question at issue in *Young* did not ask the witness his opinion of whether the defendant meant to do something. Rather, the question asked the witness *what he would do* had he been the defendant:

Q. Now, Mr. Berry, let's assume for a minute that you were down there [at Billy's Bar] working at 11:00 at night, the place is closed. And the police came in. What would you do?

A. [After objection, responses, ruling, and restatement of question]: I would just ask them what's wrong.

Q. You would ask them what's wrong, right?

A. Yes.

Q. You wouldn't go back in this men's room and hide, would you, because you wouldn't have nothing [sic] to hide for, right?

A. No.

803 S.W.2d at 337. The court of appeals held that the question was proper, *id.*, but this is not the same type of question that is at issue

here. The question to Middleton was whether he thought Mosby intentionally shot Young, *not* what Middleton would do in some circumstance. Middleton could competently testify to what he would do in some event, but could not competently testify to what was in Mosby's mind when Mosby shot Young. For the question in *Young* to be comparable to the one here, the *Young* prosecutor would have had to have asked Mr. Berry what was in the defendant's mind when he retreated to the bathroom.

We overrule point of error one.[2]

### Point of Error Two

In his second point of error, appellant argues that the judge erred by excluding "evidence of Gary Mosby's statement to Deryk Middleton that he did not intend to kill Joseph Young." Appellant's trial counsel asked Middleton, "[F]rom conversations with Mr. Mosby, isn't it true Mr. Mosby told you he did not intend to kill Joe Young?" The prosecutor objected on the ground of hearsay. Appellant's counsel argued the answer was admissible under the co-conspirator statement exception to the hearsay rule. The judge sustained the prosecutor's objection. We agree that the answer did not fall under the exception.

■ Under Texas Rule of Criminal Evidence 801(e)(2)(E), a statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party made "during the course and in furtherance of the conspiracy." For the statement to be admissible, it is not enough that the statement be in the course of or just somehow related to the conspiracy. *Williams v. State*, 790 S.W.2d 643, 645 (Tex.Crim.App.1990).

---

2. In so doing, we note that the exclusion of improper lay opinion testimony on the issue of intent to kill clearly does not leave juries without evidence on the issue of intent to kill. Juries can still look, as they always have, to the facts and circumstances of the event itself to decide the issue of intent to kill. *See Garcia v. State*, 887 S.W.2d 862, 869 (Tex.Crim.App.1994) ("The specific intent to kill may be inferred from the use of a deadly weapon."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995); *Robertson v. State*, 871 S.W.2d 701, 705 (Tex.Crim.App. 1993) (in capital murder case, "[i]ntent may be inferred from the actions or conduct of appel-

lant"), *cert. denied,* —— U.S. ——, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994); *Walker v. State*, 440 S.W.2d 653, 657 (Tex.Crim.App.1969) (in murder case, "[t]he intent of the defendant may always be ascertained or inferred from the means used and the wounds inflicted by him.... Further, the trier of the facts may infer intent to kill from any facts in evidence which to his mind prove existence of such intent to kill ..."); *Conroy v. State*, 843 S.W.2d 67, 70 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd.) ("Intent at the time of the shooting may be inferred from the acts, words, and conduct of the appellant.").

"Some substance must be given to the rule's requirement, not only that the statement was made 'in the course' of the conspiracy, but also that it was made 'in furtherance' thereof." *Id.* The "in furtherance" requirement "is a separate requirement that must be met in addition to the requirement that the statement be made 'during the conspiracy.'" *Meador v. State,* 812 S.W.2d 330, 333 (Tex. Crim.App.1991).

■ Rule 801(e)(2)(E) adopted the wording of its federal counterpart, Federal Rule of Evidence 801(d)(2)(E). *Williams v. State,* 815 S.W.2d 743, 745 (Tex.App.—Waco 1991), *rev'd and remanded on other grounds,* 829 S.W.2d 216 (Tex.Crim.App.1992), *conviction rev'd,* 838 S.W.2d 952 (Tex.App.—Waco 1992, pet. ref'd).[3] The Court of Criminal Appeals intended to adopt the interpretation of the federal rule, as well. 815 S.W.2d at 745. We can thus look to federal decisions to determine the substance of the "in furtherance of" requirement. *Id.*

■ A review of the federal decisions reveals a crucial distinction between co-conspirator statements that met the "in furtherance of" requirement and those that did not. *Williams,* 815 S.W.2d at 745–46. Generally, statements that met the requirement and were held to have been in furtherance of the conspiracy were made (1) with the intent to induce another to deal with the co-conspirators or in any other way to cooperate with or assist the co-conspirators, (2) with the intent to induce another to join the conspiracy, (3) in formulating future strategies of concealment to benefit the conspiracy, (4) with the intent to induce continued involvement in the conspiracy, or (5) for the purpose of identifying the role of one conspirator to another. *Id.* at 746. These statements were found to further the conspiracy because they "set in motion transactions that were an integral part" of the common objective of the conspiracy. *Id.*

■ Examples of statements in federal decisions that did not meet the "furtherance" test, and thus remained hearsay, were those that were (1) casual admissions of culpability to someone the declarant had individually decided to trust, (2) mere narrative declarations, (3) mere conversation between conspirators, or (4) "puffing" or "boasts" by a conspirator. *Williams,* 815 S.W.2d at 746. Statements such as these were held not to have advanced the objectives of the conspiracy. *Id.*

■ Mosby's statement that he did not mean to kill Young clearly did not advance the objectives of any conspiracy. It was a "mere narrative declaration" or part of "mere conversation" between Mosby and Middleton; it did not further any conspiracy, but was rather only incidental to it. As the statement related to any conspiracy, it was entirely gratuitous. The judge did not err in concluding that the statement did not fall under the co-conspirator exception to the hearsay rule.[4]

■ Appellant also argues that Mosby's statement that he did not mean to kill Young was admissible because (1) the "constitutional principles of due process and fair trial" require its admission, and (2) the statement was a hearsay exception because it was a statement against interest.[5] Neither argument was raised in the trial court, and these arguments are therefore waived. *Lape v. State,* 893 S.W.2d 949, 954–55 (Tex.App.— Houston [14th Dist.] 1994, pet. ref'd.).

We overrule point of error two.

### Point of Error Three

In his third point of error, appellant argues that the judge erred by excluding "evidence of Andre Lamon Mosley's written statement to Houston Police ... that Gary Mosby told Mosley that he thought he shot past Joseph Young." In the statement, Mos-

---

3. We cite the *Williams* opinion (the one at 815 S.W.2d 743) several times below. None of the propositions for which we cite that case were implicated in its reversals.

4. As the proponent of the statement, it was appellant's burden to show, by a preponderance of the evidence, that the statement met the requirements of rule 801(e)(2)(E). *Meador,* 812 S.W.2d at 333.

5. *See* Tex.R.Crim.Evid 803(24).

ley wrote that Mosby had said, shortly after shooting Young, "I didn't [shoot Young], he's just bleeding cause [sic] [appellant] hit him on the head, I shot past him." The prosecutor objected on the ground of hearsay. Appellant's counsel argued the answer was admissible under the co-conspirator statement exception to the hearsay rule. The judge sustained the prosecutor's objection. We agree that the answer did not fall under the exception.

■ Like the statement at issue in point of error two, Mosby's statement that he thought he shot past Young did not advance the objectives of any conspiracy. It was a "mere narrative declaration" or part of "mere conversation" between Mosby and Mosley. It did not further any conspiracy, but was instead completely gratuitous. As the statement related to any conspiracy, it was insignificant. The judge did not err in concluding that the statement did not fall under the co-conspirator exception to the hearsay rule.[6]

■ Appellant also argues that Mosby's statement that he thought he shot past Young was admissible because (1) the "constitutional principles of due process and fair trial" require its admission, and (2) the statement was a hearsay exception because it was a statement against interest. Neither argument was raised in the trial court, and these arguments are therefore waived. *Lape*, 893 S.W.2d at 954–55.

We overrule point of error three.

We affirm the judgment of the trial court.

HEDGES, J., concurs.

HEDGES, Justice, concurring.

I agree with the court's opinion. I write separately to address a case relevant to appellant's first point of error. The case, *Doyle v. State*, 875 S.W.2d 21 (Tex.App.—Tyler

1994, no pet.), is close enough to our facts to bear comment.

In *Doyle*, the court considered testimony from prison guards that the defendant's blows to another guard were intentional. 875 S.W.2d at 23. The court held that the testimony was admissible. *Id.* at 23. I respectfully disagree with the Tyler Court. Like the majority in this case, I believe that lay opinion testimony on the defendant's mental state is, by its very nature, purely speculative, and thus improper.

The *Doyle* Court relied solely on Texas Rule of Criminal Evidence 701. 875 S.W.2d at 23. Rule 701 allows opinion testimony by a lay witness, but *only* if the testimony is "helpful to a clear understanding of his testimony or the determination of a fact in issue." TEX.R.CRIM.EVID. 701. No witness can give reliable testimony about what was actually in another person's mind when the other person performed an act. It is a fact of human existence that no person can truly *know* what is in the mind of another. Therefore, one person's opinion about what another person was thinking is by definition a *speculative* opinion. A speculative opinion does not help the jury to either (1) understand the witness' testimony better, or (2) decide the question of the actor's intent. Mere conjecture does not, and cannot, assist a jury.

For these reasons, I do not believe that rule 701 supports the *Doyle* Court's holding.

With these observations, I concur in the court's judgment.

---

**6.** Before the judge ruled on the admissibility of Mosley's written statement, appellant's counsel stated that he had not read the statement. He asked that he be allowed to look at it and also that the judge read it "to see if it has any *Brady* material in it." In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]" There is no evidence that the prosecutor withheld the statement from appellant's trial counsel, and in fact counsel said that it was never his position that the prosecutor was "trying to hide anything." The statement was, in any event, not admissible as a co-conspirator statement.