Affirmed and Opinion filed November 27, 2002

















Affirmed and
Opinion filed November 27, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NOS. 14-01-00392-CR

                  14-01-00393-CR and

          14-01-00394-CR

_______________

 

KEITH WAGNER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

______________________________________________________

 

On Appeal from 179th District Court

Harris County, Texas

Trial Court Cause Nos. 826954;
826955; and 826956

______________________________________________________

 

O P I N I O
N

            A jury found appellant, Keith
Wagner, guilty of theft, burglary of a habitation, possession of cocaine (in
excess of 400 grams) with intent to deliver, and the trial court assessed
punishment of eight years’ imprisonment; eighteen years’ imprisonment;
twenty-five years’ imprisonment; and a $10,000 fine, respectively.  We affirm.

                                                          I.  Background

            In 1999, appellant was an officer
with the Pasadena Marshal’s Department. 
He received information that police informant Michael Bohannon was
engaged in drug trafficking.  Appellant
contends he planned to conduct a fake arrest and drug seizure in order to
arrest Bohannon and others.  Sergeant
J.W. Belk, Internal Affairs Division of the Houston Police Department,
testified that—without appellant’s knowledge—he was using Bohannon to catch
appellant in actual acts of corruption. 
Belk wanted to determine whether appellant would conduct a “drug rip” (a
term for a fake drug raid in which an officer steals the drugs and drug money)
and keep the proceeds.  Bohannon told
appellant he would be transporting cocaine from south Texas to Houston in a recreational
vehicle (RV).  They planned for appellant
to stop the RV, conduct a fake arrest, and take the cocaine.  Further, they planned to go to a “safe house”
after the fake arrest to steal the money that was to be used to buy Bohannon’s
cocaine.  They executed the plan, but it
ended in appellant’s arrest.  Appellant
was charged with burglary of a habitation, theft of money, and possession of
cocaine with intent to deliver.  

            Appellant maintained that he merely
posed as a corrupt police officer and conducted the drug rip while planning to
arrest Bohannon and Bohannon’s associate, Eric Gibson.  Appellant further maintained that he feigned
acquiescence to Bohannon’s plan so he could confiscate the money and illegal
drugs, and earn acknowledgment from his peers for making such a large drug
bust. 

II. 
Extraneous offenses

A.  Lack of Notice

 

            In his first issue, appellant
contends the trial court erred by admitting evidence of two extraneous offenses
for which the State failed to give notice under Rule of Evidence 404(b) or
article 37.07 of the Code of Criminal Procedure.  Specifically, he first complains that his
alleged co-conspirator, Eric Gibson, was permitted to testify during
guilt/innocence that he and appellant had been conducting drug rips since 1995
and had stolen money from a drug buyer stopped for a traffic violation.  Second, he complains that in the punishment
phase, Gibson was permitted to testify regarding appellant’s participation in
drug rips since 1995, stealing money from a drug dealer and splitting the
proceeds. 

1.  Standard of Review

            We review the trial court’s
admission of extraneous offense evidence for an abuse of discretion.  Mitchell
v. State, 931 S.W.2d 950, 953 (Tex. Crim. App.
1996).  We will uphold the trial court’s
ruling if it is within the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). 

2.  Rule of Evidence 404(b)

            Appellant requested notice of the
State’s intent to use extraneous offenses under rule 404(b) of the Texas Rules of
Evidence and article 37.07 of the Texas Code of Criminal Procedure.  The State responded, detailing several
extraneous offenses it intended to use against appellant in either the
guilt/innocence or punishment phase of trial. 
Appellant contends the State introduced evidence in both the
guilt/innocence and punishment phases that he had participated in drug rips
since 1995.  Appellant objected to that
testimony because the State did not give notice of its intent to use such
evidence. 

            Under Rule 404(b), evidence of other
crimes is inadmissible to prove character and action in conformity
therewith.  However, the rule permits
admission of extraneous offenses for purposes such as proof of motive,
opportunity, intent, preparation, knowledge, identity, or absence of mistake or
accident, provided that the State gives reasonable notice in advance after
timely request by the defendant.  Tex. R. Evid. 404(b).  The purpose of the rule is to apprise the
defendant of extraneous offenses the State intends to introduce at trial.  Webb v.
State, 36 S.W.3d 164, 176 (Tex. App.—Houston [14th
Dist.] 2001, pet. ref’d). 

            Eric Gibson, one of appellant’s
co-conspirators, testified about the extraneous offenses of which appellant
complains.  Before the disputed
testimony, Gibson explained to the jury that when he was released from jail in
1999, he returned to Houston and
renewed connections with appellant and a police officer named Frank
Ferguson.  In response to the State’s
question, “How did you meet Frank Ferguson?”, Gibson nonresponsively
replied, “In 1995, we had planned— 
.”  The State cut off his answer
before he could complete it.  Gibson then
testified that appellant introduced him to Frank Ferguson.  Subsequently, Gibson testified generally that
in 1999, he knew several police officers in two departments with whom he
conducted drug rips.  Appellant’s
apparent argument is that the combination of Gibson’s nonresponsive
answer and his later description of drug rips is evidence of extraneous
offenses dating back to 1995.  We cannot
fairly interpret this testimony as evidence appellant had been actually “doing
drug rips” since 1995.  The only
connection between appellant and 1995 that we can glean from this testimony is
that appellant knew Wagner as early as 1995. 
Accordingly, considering the testimony in context, we find the trial
court did not erroneously admit evidence that appellant had conducted drug rips
since 1995.

            Appellant also complains about
Gibson’s description during guilt/innocence of a traffic stop in which appellant
stole $6,000 from a drug buyer who was driving the car.  Appellant did not object to this
testimony.  Failure to timely object and
obtain a ruling results in waiver of error on appeal.  Tex.
R. App. P. 33.1.  

            In connection with admission of
extraneous offense evidence, we must determine whether appellant’s request for
a running objection preserved error. 
Running objections are an exception to the general rule that a party
must continue to object and obtain a ruling for each instance of inadmissible testimony.  Barletta v. State,
994 S.W.2d 708, 714 (Tex. App.—Texarkana 1999, pet. ref’d).  A running objection must be specific and
unambiguous.  See Sattiewhite v. State, 786 S.W.2d 271,
283–84 n.4 (Tex. Crim. App. 1989) (a running
objection must not “encompass too broad a reach of subject matter over too
broad a time or over different witnesses”). 
Courts must carefully review the record to determine whether a running
objection preserves error depending on the facts and circumstances of each
case.  White v. State, 784 S.W.2d 453, 458–61 (Tex. App.—Tyler 1989, pet. ref’d).

            In this case, appellant asserted a
running objection based on Gibson’s general definition of a drug rip.[1]  Appellant also asserted a Rule 404(b) running
objection to Gibson’s description that drug rips included kicking in doors of
premises and presenting fake arrest warrants. 
Apparently appellant’s running objection is purported to cover seventeen
or more pages of the record.  This part
of the record includes Gibson’s testimony about the specific traffic stop in
which he contended appellant took a drug buyer’s money.  We find appellant’s running objection to
general testimony about drug rips was too broad to apprise the trial court that
he was also objecting to a specific incident involving appellant.  Accordingly, appellant has failed to preserve
error.  Tex.
R. App. P. 33.1(a).  Further, we
note that appellant cross-examined Gibson about the traffic stop.  “The general rule is that error regarding
improperly admitted evidence is waived if that same evidence is brought in
later by the defendant or by the State without objection.”  Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993). 
For these two reasons, the trial court did not abuse its discretion in
admitting evidence about the traffic stop during guilt/innocence. 

3.  Article
37.07, Code of Criminal Procedure

            During the punishment phase, Gibson
testified that in 1995 he and appellant split the proceeds after stealing
marijuana, cocaine, and $7,000 from a drug dealer.  Appellant complains that, despite his request
under article 37.07 of the Code of Criminal Procedure, the State gave no notice
of its intent to introduce this evidence.

            Article 37.07 provides, in part,
that upon a finding of guilt, evidence may be offered by either party as to any
matter the trial court deems relevant to “sentencing, and the evidence is not
limited to the prior criminal record of the defendant.”  Tex.
Code Crim. Proc. Ann. art. 37.07 § 3(a).  Article 37.07 section 3(g) provides for
admission of extraneous offense evidence if the State gives timely notice of
its intent to use that evidence in the punishment phase of trial.  

            Here, the State failed to give
notice of its intent to use evidence of the 1995 transaction against appellant
during the punishment phase.  The State
argues that appellant was aware the State might use this offense because it was
detailed in Gibson’s statement.  The
State further contends appellant had notice through its fourth notice of
accomplice convictions, pending charges, and suspected criminal offenses.  Accordingly, the State contends appellant was
not surprised by presentation of the evidence. 
Article 37.07 requires notice of the State’s intent to offer extraneous offense evidence; no intent is
presumed.  See Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim.
App. 1995).  By opening its file to the
defendant and serving notice of accomplice convictions, pending charges, and
suspected criminal offenses, the State has not satisfied the notice requirement
of Article 37.07 § 3(g).  The defendant
is not required to make inferences about the State’s intent from documents in
the file.  Webb v. State, 36 S.W.3d 164, 179 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d).  Having requested notice of the State’s intent
to use extraneous offenses during punishment, appellant was entitled to assume
the State only intended to use those offenses listed in its notice.  See
id.  Because the State did not
provide notice of its intent to use the extraneous offense, the trial court
erred in admitting that evidence.

            Having found error in the trial
court’s ruling, we must determine whether appellant was harmed by the improper
admission of the evidence.  Because no
constitutional error is involved when evidence of an extraneous offense is
admitted without notice, we look to whether the error affected appellant’s
substantial rights.  Tex. R. App. P. 44.2(b).  The substantive right affected by the
admission of an extraneous offense is the right to a fair trial.  See
Garza v. State, 963 S.W.2d 926, 931 (Tex. App.—San Antonio 1998, no
pet.).  An error affects a substantial
right when the error had a substantial and injurious effect or influence on the
jury’s verdict.  King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997).  If the error had no
influence or only a slight influence on the verdict, it is harmless. Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  However, if we harbor “grave
doubts” the error did not affect the outcome, we must treat the error as if it
did.  See
Webb v. State, 36 S.W.3d at 182–83. 
In assessing the likelihood that the error adversely affected the jury’s
decision, we consider everything in the record, including all testimony and
evidence admitted for the jury’s consideration, the nature of the evidence
supporting the verdict, the character of the alleged error, and how the error
might have been considered in connection with other evidence in the case.  See
Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000).  We
may also consider the State’s theory of the case, any defensive theories,
closing arguments, and voir dire.  Id. 

            To assess error in violation of a
statute, we examine whether the purposes of the statute or rule was thwarted by
the error.  See Ford v. State, 73 S.W.3d 923, 925–26 (Tex. Crim. App. 2002). 
Accordingly, we must assess harm from violation of the notice provision
of article 37.07, section 3(g) against its intended purpose.  See Roethel v. State, 80 S.W.3d 276, 281 (Tex.
App.—Austin 2002, no pet.).  The notice
requirement found in section 3(g) does not relate to the substantive
admissibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g).  “The lack of notice does not render the
evidence inherently unreliable, but raises a question about the effect of
procedural noncompliance.”  Roethel, 80
S.W.3d at 282.  The purpose of section
3(g) is to avoid unfair surprise and to enable the defendant to prepare to
answer the extraneous offense evidence.  Nance v. State, 946 S.W.2d 490, 493
(Tex. App.—Fort Worth 1997, pet. ref’d).  In addressing the potential harm suffered by
appellant, we analyze how the deficient notice affected appellant’s ability to
prepare for the evidence.  Roethel, 80
S.W.3d at 282.  In conducting this
analysis, we examine the record to determine whether the deficient notice
resulted from prosecutorial bad faith or prevented the defendant from preparing
for trial.  Id.  In determining whether the defendant was
prevented from preparing for trial, we must determine whether the defendant was
surprised by the substance of the testimony and whether that affected his
ability to prepare cross-examination or mitigating evidence.

            Appellant contends he was harmed
because his only available argument in opposition to the State’s evidence would
have been that the events did not occur. 
Appellant further contends he was unable to garner and present evidence
to effectively make such an argument because he did not expect these charges to
be levied against him.  

            During the guilt innocence phase,
although Eric Gibson alluded to an event in 1995, he did not testify to the
details of the drug transaction.  During
Gibson’s testimony at the punishment phase, the State asked him about
drug-related activities in which he participated with Keith Wagner prior to
1999.  Defense counsel objected,
contending he had not received notice under article 37.07 § 3(g) of the Texas
Code of Criminal Procedure.  The trial
court overruled the objection and the following occurred:

Q.  (By Ms. Magness
[the prosecutor]:  Mr. Gibson, when –
first of all, did you detail in your statement an event that occurred prior to
October 1999?

MR.  DeGUERIN [defense
counsel]:  Now she’s asking what his
statement contains.  I object to that.

THE COURT:  Overruled.

Q.  (By Ms. Magness)  What year did you participate in an offense –
or in activity with Keith Wagner that involved drugs?

MR. DeGUERIN:  This has already been gone into, your Honor,
at the trial.

THE COURT:  Overruled.

A.  1995.

 

            We find no indication of bad faith
in the State’s failure to provide notice of the extraneous offense.  Although the State’s notice did not meet the
requirements of article 37.07 § 3(g), there is no indication from the record
that the omission was intended to mislead appellant and prevent him from
preparing a defense.  Nor was appellant
surprised by the substance of the testimony. 
The record reflects that defense counsel knew of the prior offense, and
from the testimony at trial, reasonably should have known that the State
intended to use that offense against appellant. 
Although the better practice is for the State to give notice as mandated
by the Legislature, we find under the unique facts of this case, appellant was
not harmed by the lack of notice. 
Appellant’s first issue is overruled.

B.  Sua Sponte Reasonable
Doubt Instruction

            In his supplemental issue, appellant
complains he suffered egregious harm by the trial court’s failure, during the
punishment phase, to sua sponte
instruct the jury that it must find appellant committed the extraneous offenses
beyond a reasonable doubt before considering such offenses.  See
Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp.
2002).

            Before evidence of extraneous
misconduct may be considered in assessing punishment, the misconduct must be
proved beyond a reasonable doubt.  Id.; see Huizar v. State, 12 S.W.3d 479, 483–84 (Tex. Crim.
App. 2000).  As appellant correctly
points out, a trial court is required to sua sponte instruct the jury on this burden
of proof in the punishment phase.  See Huizar, 12
S.W.3d at 483–84.  Thus, the trial
court’s failure to give such an instruction, though not requested, was
error.  See id.  

            However, because appellant failed to
object to this error, he must show that it caused egregious harm.  See
Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim.
App. 1998).  “Egregious harm” exists when
the error was so harmful as to deny the defendant “a fair and impartial trial.”  Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Barrera v. State, 982 S.W.2d 415, 417
(Tex. Crim. App. 1998).  Egregious harm consists of those errors that
affect the very basis of the case, deprive the defendant of a valuable right,
vitally affect a defensive theory, or make the case for punishment clearly and
significantly more persuasive.  See Lee v. State, 29 S.W.3d 570, 578
(Tex. App.—Dallas 2000, no pet.).  To
determine whether the appellant suffered egregious harm, the error must be
viewed in light of the entire jury charge, state of the evidence, including
contested evidence and the weight of probative evidence, arguments of counsel,
and any other relevant information revealed by the record as a whole.  Mann,
964 S.W.2d at 641.  Any harm suffered
must be actual and not merely theoretical. 
Dickey v. State, 22 S.W.3d
490, 492 (Tex. Crim. App. 1999).  

            Appellant contends he suffered
egregious harm because the court admitted evidence of the following two
extraneous bad acts: (1) possession of a pistol with its serial numbers filed
off (called a “throw-down weapon”) and (2) participation with Eric Gibson in a
drug rip in 1995.  The latter was
specifically mentioned, along with several other drug rips, in the State’s
closing argument at punishment:  “Is this
really a second chance?  Seems like it’s
about a seventh chance if you factor in Ronda
 Street and McDermott and the house at the
ship channel and the 1995 offense and the Hotchkiss address and then this
offense.”  The pistol was not a focus of
closing argument.

            In reviewing the record as a whole,
we cannot conclude that appellant was denied a fair and impartial trial.  See
Barrera, 982 S.W.2d at 417.  Evidence
reflecting appellant’s participation in the drug rip in October 1999 was
presented during the guilt/innocence phase. 
Appellant’s participation was uncontested, and his defense was that he
was merely posing as a corrupt police officer. 
See Allen v. State, 47 S.W.3d
47, 51–53 (Tex. App.—Fort Worth 2001, pet. ref’d) (no
egregious harm for missing instruction at punishment phase where evidence at
guilt/innocence phase supported punishment assessed).  Further, the State did not specifically
direct the jury’s attention away from the facts of this case in closing
argument.  Instead, the State focused on
the trust that was destroyed by appellant’s corruption and greed.  Finally, the jury received a reasonable doubt
instruction on extraneous offenses just one day earlier in the guilt/innocence
phase.  See Gholson v. State, 5 S.W.3d 266, 271 (Tex. App.—Houston [14th
Dist.] 1999, pet. ref’d) (no egregious harm shown
where jury received reasonable doubt instruction for extraneous offenses in
guilt/innocence, which was held same day as punishment).  Finding no egregious harm, we overrule
appellant’s supplemental issue.

III. 
Evidentiary Rulings

A.  Officer’s Knowledge about
Confidential Informant

 

            In his second issue, appellant
contends he was harmed by the trial court’s refusal to allow cross-examination
of Officer Belk about Bohannon’s criminal history and reliability. 

            Appellant first contends the trial
court refused to allow him to make an offer of proof stating what his
cross-examination would have been. 
Although the trial court did not allow an offer of proof when the State
objected to appellant’s cross-examination, the court later allowed appellant to
make an offer of proof when the jury was out of the courtroom.  Therefore, appellant’s claim that he was
denied the opportunity to make an offer of proof has no merit.  Appellant’s offer of proof showed that he
sought to question Belk about Bohannon’s criminal history.  

            The Sixth Amendment to the United
States Constitution guarantees an accused the right to confront the witnesses
against him.  Cross-examination allows
the jury to assess a witness’s credibility and exposes facts the jury may use
in its assessment.  Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim.
App. 1996).  While the sixth amendment
protects an accused’s right to cross-examine
witnesses, it does not prevent a trial judge’s limitation of cross-examination
due to concerns about, among other things, harassment, prejudice, confusion of
the issues, or admissibility of the evidence. 
See Delaware v. Van Arsdall, 475 U.S. 673, 679,
106 S. Ct. 1431, 89 L.Ed.2d 674 (1986).  We review a trial court’s ruling on admission
of evidence for an abuse of discretion.  Salazar v. State, 38 S.W.3d 141, 154
(Tex. Crim. App.), cert. denied, 122 S. Ct. 127 (2001).

            Bohannon’s own testimony revealed
his criminal history and the police officer’s assistance in his release from
jail.  On direct, Bohannon discussed his
criminal convictions, pending charges, and release from jail on a personal
recognizance bond obtained with Sergeant Smith’s help so that Bohannon could
assist in an investigation.  Bohannon
further admitted that he violated his agreement with Sergeant Smith by carrying
weapons, possessing illegal drugs, and engaging in illegal activity without
prior permission.  Additionally, Bohannon
testified about his subsequent federal conviction and 188-month sentence for
possession of 63 kilograms of cocaine in July 2000.  Further, on cross-examination, Bohannon
revealed that he jumped bond and eluded police for five years on a 1994 charge
for possession with intent to deliver marijuana.  He further testified that he was not
apprehended until July 1999, when he was arrested for a weapons charge.  Bohannon also admitted his arrest record
dated to 1985.  Finally, Bohannon
discussed his participation in drug rips conducted from September 1999 through
October 1999 and the details of his federal drug conviction.  Thus, details of Bohannon’s criminal history
were admitted before the jury. 
Accordingly, even if erroneously disallowed to develop Bohannon’s
criminal background through examination of Officer Belk, appellant was not
harmed.

            Appellant next contends the trial
court prevented cross-examination of Officer Belk regarding Bohannon’s
reliability, which reflected on Officer Belk’s judgment and reliability.  Our review of the record reveals
otherwise.  The record shows that
appellant developed, through cross-examination, the following evidence: (1)
Officer Belk conducted an independent background investigation of Bohannon,
checking his criminal history; (2) Officer Belk was aware that informants often
have their own agenda, and he attempted to minimize Bohannon’s potential to
compromise the operation; and (3) Officer Belk did not consider Bohannon to be
of “sterling” character.  On direct
examination, Officer Belk testified that the typical informant is associated
with illegal activities, has a criminal history, and hopes for leniency in his
own criminal case if he assists the authorities.  Officer Belk further testified that use of
informants in a case such as this is a “necessary evil” because “most dirty
cops don’t commit crimes in front of other cops.”

            Therefore, the evidence that reveals
Bohannon’s unreliability and Officer Belk’s lack of good judgment was actually
developed either through Bohannon’s testimony, or through Officer Belk’s
testimony during direct examination. 
Accordingly, appellant has failed to demonstrate that his substantial
rights were violated.  Tex. R. App. P. 44.2(b).

            Finally, we hold the trial court
properly refused to allow appellant to impeach Officer Belk’s reliability
through evidence of Bohannon’s criminal activity.  While Texas Rule of Evidence 613(b) permits
impeachment of a witness with proof of circumstances or statements showing bias
or interest, the impeachment should be with the witness’s own acts.  Because the trial court properly ruled that
appellant could not impeach Officer Belk through Bohannon’s criminal acts, the
court did not abuse its discretion in limiting appellant’s
cross-examination.  We overrule
appellant’s second issue.

B.  Testimony
from Confidential Informant and Fact Witness

            In his third issue, appellant
contends he was harmed because the trial court prevented him from
cross-examining a confidential informant and fact witness about statements made
by appellant and co-conspirators, their prior relationships, and their criminal
histories.  Appellant sought to
cross-examine Bohannon on (1) details of his prior offenses; (2) the possible
sentence a jury might assess in a pending criminal case; and (3) his testimony
concerning a prior relationship with Francisco Perez.

            Even if we assume that appellant was
denied the right to fully confront these witnesses on their relationship and
criminal histories, we conclude that there was no harm to appellant.  We review harm in disallowing
cross-examination of witnesses in light of (1) the importance of the witness’s
testimony in the prosecution’s case; (2) the cumulative nature of the
testimony; (3) the presence or absence of evidence corroborating or
contradicting the testimony of the witness on material points; (4) the extent
of cross-examination otherwise permitted; and (5) the overall strength of the
prosecution’s case.  Kesterson v. State, 997 S.W.2d 290, 293 (Tex. App.—Dallas 1999, no
pet.).  

            First, Bohannon’s criminal history
was sufficiently before the jury.  Thus,
further details were merely cumulative in nature.  See id.  Appellant complains that Bohannon’s criminal
history included unconvicted arrests, home invasions,
kick burglaries, and carjackings designed to steal
drugs and drug money.  On direct,
Bohannon admitted that he was not a law-abiding citizen.   He admitted that he was in the business of
robbing drug dealers by kicking in their doors, pulling them over in their
cars, or raiding their homes.  Bohannon
further testified that he had been involved in doing “an awful lot of drug
raids.”  Bohannon testified that he
impersonated a police officer, carried a weapon, and possessed illegal drugs,
all in violation of his agreement with law enforcement officials.  Additionally, he testified that he had been
arrested for possession of sixty-three kilograms of cocaine.  During cross-examination, Bohannon testified
that he had been a fugitive from Walker County.  He had also been arrested on a weapons
charge.  He admitted to a history of
convictions, arrests, and trouble with the law dating to 1985.  It is unlikely that the jury had a mistaken
impression about the extent and seriousness of Bohannon’s criminal history.

            Second, there was considerable
evidence admitted pertinent to Bohannon’s bias in testifying for the
State.  Bohannon testified that in
exchange for providing intelligence to Sergeant Smith, Sergeant Smith helped
him secure a personal recognizance bond from Walker County.  Additionally, Sergeant Smith offered to ask
the district attorney for leniency. 
According to Bohannon, the Walker County case was
still pending.  From the evidence
presented, the jury could plainly see Bohannon’s motivation to cooperate with
the authorities.  We therefore find that
there was no harm in prohibiting appellant from attempting to introduce
cumulative evidence regarding Bohannon’s criminal history and his motivations
for cooperating with the investigation.  

            Third, there is an absence of
corroboration showing that Bohannon had a bias in testifying for the State
because of his prior carjacking of Perez’s car. 
See id.  Appellant suggests the carjacking case
against Bohannon was dropped after he started working for the State.  The evidence in the record shows that the
carjacking case was dropped by a prosecutor unrelated to this case because of
reliability problems with witnesses.  We
find appellant suffered no harm from restricted cross-examination because this
particular example of bias is unsupported and, in fact, controverted
by other evidence.  

            Fourth, Perez’s testimony in a bill
of exceptions does not corroborate appellant’s complaints about witness
credibility.  Appellant claims if
permitted to fully cross-examine Perez, such testimony would reveal Bohannon’s
lies about why he chose not to enter Perez’s home in a subsequent drug
rip.  Bohannon testified that he did not
enter Perez’s home because one of the other corrupt police officers, Frank
Ferguson, was uncomfortable working with him, not because he feared recognition
by Perez as the carjacker.  Perez’s
testimony in the bill of exceptions merely reveals that he did not recognize
Bohannon.  Thus, even if repeated in
front of the jury, Perez’s testimony would not cast doubt on Bohannon’s
truthfulness about the subsequent drug rip at Perez’s home.  Further, nothing in the bill of exceptions
suggests that Perez was lying about not recognizing Bohannon. 

            We find appellant suffered no harm
from restricted cross-examination of Bohannon and Perez.  Accordingly issue three is overruled.

C.  Testimony
from Alleged Co-Conspirators Regarding Hearsay Statements

            In his fourth issue, appellant
contends the trial court erred in disallowing his hearsay statements with a
co-conspirator because he had not admitted being a party to a conspiracy.  In the State’s case-in-chief, appellant’s
alleged co-conspirators were permitted to testify about their conversations
with appellant, and some recordings of conversations were admitted in evidence.  In his defense, appellant sought to explain
the conversations and demonstrate that he merely pretended to participate so he
could gain the co-conspirators’ trust and ultimately arrest them for drug
trafficking.

            Appellant specifically directs us to
a conversation with his brother, a police officer involved in the drug rips:

Q.        Okay.  So, in late
September, early October of 1999, who first mentioned Eric Gibson to you?

A.        My brother, Mike.

Q.        And what did he say about him?

A.        He said that he had met up with a guy that he had known a
while back and that he had had a – just got reacquainted with an old friend of
his that was a major drug courier or a mule for a large, I believe it was – it
was a large cartel out of Mexico called the Garza cartels.  He was running drugs back and forth and –

THE STATE:  Judge, I’ve got to object to this.  This is all hearsay.

THE COURT:            Sustained.

 

            The trial court explained that under
appellant’s theory, there was no conspiracy. 
The trial court would not allow appellant to testify about the same
conversations previously discussed in the State’s case-in-chief “[u]nless they were statements
made in furtherance of a conspiracy.” 


            We hold that the trial court
properly excluded appellant’s hearsay testimony because the statement was not
made in furtherance of a conspiracy under Rule of Evidence 801(e)(2)(e).  “‘Hearsay’ is a statement, other than one
made by the declarant while testifying at the trial
or hearing, offered in evidence to prove the truth of the matter asserted.”  Tex.  R.  Evid. 801(d). 
A statement is not hearsay if “[t]he statement is offered against a
party and is . . . a statement by a co-conspirator of a party during the course
and in furtherance of the conspiracy.”  Tex. R. Evid. 801(e)(2)(e).  To be admissible, it is not enough that the
statement be in the course of or just somehow related to a conspiracy.  Williams
v. State, 790 S.W.2d 643, 645 (Tex. Crim. App.
1990).  “Some substance must be given to
the rule’s requirement, not only that the statement was made ‘in the course’ of
the conspiracy, but also that it was made ‘in furtherance’ thereof.”  Id.  The “in furtherance” requirement “is a
separate requirement that must be met in addition to the requirement that the
statement be made ‘during the conspiracy.’” 
Meador v. State, 812 S.W.2d
330, 333 (Tex. Crim. App. 1991). 

            Statements that are “in furtherance”
of a conspiracy are the following:  

 

 class=Section2>

those made (1) with the
intent to induce another to deal with the co-conspirators or in any other way
to cooperate with or assist the co-conspirators, (2) with the intent to induce
another to join the conspiracy, (3) in formulating future strategies of
concealment to benefit the conspiracy, (4) with the intent to induce continued
involvement in the conspiracy, or (5) for the purpose of identifying the role
of one conspirator to another.

 

 

 class=Section3>

Williams v. State, 815 S.W.2d 743, 746 (Tex.
App.—Waco 1991), rev’d on other grounds, 829 S.W.2d 216, 217
(Tex. Crim. App. 1992); see also Crum v. State, 946 S.W.2d 349, 363 (Tex. App.—Houston
[14th Dist.] 1997, pet. ref’d).  These type statements further the conspiracy
because they “set in motion transactions that [are] an integral part” of the
common objective of the conspiracy.  Williams, 815 S.W.2d at 746.

            Conversely, statements that are not
in furtherance of a conspiracy, and thus remain hearsay, include those that are
(1) casual admissions of culpability to someone the declarant
had individually decided to trust; (2) mere narrative descriptions; (3) mere
conversations between conspirators; or (4) “puffing” or “boasts” by
co-conspirators.  Crum, 946 S.W.2d at 363.

            Appellant’s testimony revealed that
(1) his brother Mike first mentioned Eric Gibson to him; and (2) Mike recently
became reacquainted with Gibson and described him as “a major drug courier or a
mule for a large . . . cartel out of Mexico . . .
.”  These statements were part of “mere
conversation” between appellant and his brother and did not further any
conspiracy.  Accordingly, we hold that
the trial court did not err (1) in concluding that appellant’s testimony fell
outside the ambit of Rule of Evidence 801(e)(2)(e); and (2) in excluding the
testimony in question as hearsay.  See Fairow v.
State, 920 S.W.2d 357, 362 (Tex. App.—Houston [1st Dist.] 1996), aff’d, 943 S.W.2d
895 (Tex. Crim. App. 1997).  

            We overrule appellant’s fourth
issue.

IV.  Entrapment

            In his fifth issue, appellant
contends the trial court erred in refusing to charge the jury on entrapment.

            When evidence from any source raises
a defensive issue, and a jury charge on the issue is properly requested, the
issue must be submitted to the jury.  Tex. 
Pen.  Code Ann.§ 8.06(a) (Vernon 1974); Moore v. State, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978). 
The defense of entrapment is available where the criminal design
originated in the mind of government officials or their agents and they induced
a defendant to commit a crime he would not otherwise commit.  Sebesta v. State,
783 S.W.2d 811, 812 (Tex. App.—Houston [1st Dist.] 1990, pet. ref’d); see also
Lopez v. State, 574 S.W.2d 563, 565 (Tex. Crim.
App. 1978).  The issue here is whether
appellant was induced to engage in the crime by means likely to cause a person
to commit it or rather he was merely afforded the opportunity to commit it.  Sebesta, 783 S.W.2d at 812; see Perez v. State, 816 S.W.2d 490 (Tex. App.—Houston [14th Dist.]
1991, no pet.).  At the very core of the
issue is the effect that the inducement would have upon persons generally.  Sebesta, 783 S.W.2d at 812; McEntyre v. State, 717 S.W.2d 140, 145 (Tex. App.—Houston [1st Dist.] 1986,
pet. ref’d). 

            Further, the “defense of entrapment
is not available to a defendant [who] denies the commission of the
offense.”  Norman v. State, 588 S.W.2d 340, 345 (Tex. Crim. App. 1979). 
Denial of the offense is inconsistent with claiming the defense because
entrapment assumes the offense was committed. 
Id.  A defendant “who pleads not guilty and who
does not take the stand or offer any testimony inconsistent with commission of
the crime [is] still entitled to offer a defense of entrapment.”  Id.  Here, appellant took the stand and admitted
the acts constituting the charged offenses, but denied criminal intent.  His defense was that he performed the acts
alleged in the indictments while acting in his capacity as a peace officer
conducting narcotics investigations.  See Zamora
v. State, 508 S.W.2d 819, 822 (Tex. Crim. App.
1974) (holding that defendant’s denial of knowledge that marijuana was in his
car was a denial of the offense and did not entitle him to defense of
entrapment); Williams v. State, 848
S.W.2d 777, 780–81 (Tex. App.—Houston [14th Dist.] 1993, no pet.); Hubbard v. State, 770 S.W.2d 31, 38–39
(Tex. App. —Dallas 1989, pet. ref’d) (holding that
defendant’s denial of intent to deliver heroin was a denial of commission of
the offense, which precluded defendant from asserting entrapment); Smith v. State, 733 S.W.2d 604, 604–05
(Tex. App.—Dallas 1987, pet. ref’d), vacated on other grounds, 761 S.W.2d 17
(Tex. Crim. App. 1988).

            Because appellant denied that he
intended to commit the offenses for which he was charged, he was not entitled
to a jury charge on the defense of entrapment. 
Accordingly, we find the trial court did not err in refusing to instruct
the jury on entrapment.  We overrule
appellant’s fifth point of error.

            Having overruled all of appellant’s
points of error, we affirm the trial court’s judgment.

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment rendered and
Opinion filed November 27, 2002.

Panel consists of Justices
Yates, Seymore and Guzman.

Do Not Publish — Tex. R. App. 
P. 47.3(b).









            [1]  In defining a drug rip, the State asked Gibson:  “[E]xplain to the
jury what a narcotics ripoff is”; “Who is a
‘suspect?’”; “You say you would sit on them for surveillance.  What’s that mean?”; and “What were you
looking for?”  Appellant objected, “I
object . . . under 4.04(b) [sic], lack of notice on this general overall
testimony that he’s giving.”