**Clifton Howard HIGGINBOTHAM,
Appellant,**

v.

**The STATE of Texas, State.**

No. 2–94–285–CR.

Court of Appeals of Texas,
Fort Worth.

April 11, 1996.
Rehearing Overruled June 13, 1996.

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Fort Worth, Betty Marshall and Charles Mallin, Assistant Chiefs of the Appellate Section, Fort Worth, Steven W. Conder, Carol Montgomery, and Leslie Hardy, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Before BRIGHAM, J., and H. BRYAN POFF, Jr. and CHUCK MILLER, JJ., Sitting by Assignment.

## OPINION

MILLER, Justice, sitting by assignment.

Appellant Clifton Howard Higginbotham was indicted for the offense of burglary of a building, enhanced by two prior convictions. After a trial by jury on a not guilty plea, he was found guilty and, after pleading true to both enhancement paragraphs, was assessed a punishment by the jury of forty years in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Higginbotham brings two points of error complaining that the evidence is insufficient and that reversible error occurred when an extraneous offense was admitted. We affirm.

Because the sufficiency of the evidence is challenged, we will first review the evidence adduced at trial. On November 10, 1993, a tool shed located next to the home of its owner, Charles Washington, was burglarized and tools were taken. On the day of the burglary, Fort Worth Police Officer McClain arrived at the scene and saw Higginbotham walking away from the tool shed carrying some tools. Officer McClain stopped Higginbotham by Higginbotham's car. Washington arrived and identified the tools and tool boxes in and around the car as his. Washington then examined the shed and found the lock torn off. At trial, Washington stated that all the identified tools were locked in the tool shed the previous night. Higginbotham testified at trial that he had bought the tools from someone else behind the tool shed and had not broken into or entered the shed itself. Higginbotham's version of events was partially rebutted by the testimony of Kathleen Moore, a convenience store operator.

Before analyzing the evidence in this case, we pause to respond to Higginbotham's argument in his brief that there have been two separate standards by which to measure sufficiency that have been used interchangeably by the Court of Criminal Appeals. He maintains that the standard of review set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), that courts view the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt is different from the Court of Criminal Appeals' directive to compare the evidence at trial to the court's entire charge as stated in *Jones v. State*, 815 S.W.2d 667 (Tex.Crim.App.1991).

First of all, the *Jackson* standard was clearly adopted by the Court of Criminal Appeals two years before *Jones* in the well-analyzed case of *Butler v. State*, 769 S.W.2d 234 (Tex.Crim.App.1989). The Court traced the history of sufficiency review from the earlier "no evidence" standard of *Thompson v. City of Louisville*, 362 U.S. 199, 202, 80 S.Ct. 624, 625, 4 L.Ed.2d 654, 657 (1960) through the "proof beyond a reasonable doubt of every fact necessary" standard of *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970) up to the present *Jackson* standard: "To recapitulate, the test as delineated in *Jackson* requires us, as the reviewing court, to determine whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789." *Butler*, 769 S.W.2d at 239. The Court stated that circumstantial evidence and direct evidence cases are subject to that same *Jackson* standard of review. *Id.* at 238. Thus, in considering a claim that the Court of Criminal Appeals has adopted a different standard of review than the *Jackson* standard, we will be mindful of the allegiance to and the awareness of the *Jackson* standard that the Court has demonstrated.

Actually, it was much earlier than in *Jones* that Texas jurisprudence was refined to conform to the *Jackson* standard. In *Garrett v. State*, 749 S.W.2d 784 (Tex.Crim.App.1986), the Court of Criminal Appeals implicitly sanctioned a multi-faceted analysis of *Jackson* applied by the lower appellate court. The Court of Criminal Appeals held that because the theory of transferred intent was not in the application paragraph of the jury charge, it could not be used in measuring the sufficiency of the evidence. *Id.* at 788–90. Though the theory need not be pleaded in the indictment in order to be a valid theory of culpability, it must have been included *explicitly or by reference* in the application paragraph. Thus, the Court held that "[t]he court of appeals was correct in concluding that sufficiency of the evidence must be measured against that theory of murder which was submitted to the jury." *Garrett*, 749 S.W.2d at 789. In so holding, the Court recalled that it earlier assumed in *Benson v. State*, 661 S.W.2d 708 (Tex.Crim.App.1982), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984), that sufficiency of the evidence must be measured against the indictment "as incorporated into the charge." *Garrett*, 749 S.W.2d at 788.

In *Jones*, cited by both Higginbotham and the State, the Court of Criminal Appeals, in a

case involving the law of parties not being mentioned in the application paragraph, maintained that it is the *application paragraph alone* that is the measuring stick for sufficiency of the evidence questions. *Jones,* 815 S.W.2d at 670; *see also Plata v. State,* 875 S.W.2d 344, 346 (Tex.App.—Corpus Christi 1994, pet. granted); *Brown v. State,* 888 S.W.2d 216, 217 (Tex.App.—Amarillo 1994, no pet.); *Kephart v. State,* 888 S.W.2d 825, 829–30 (Tex.App.—San Antonio 1993), *rev'd on other grounds,* 875 S.W.2d 319 (Tex. Crim.App.1994).

If there was a question about whether the *Jones* test was the one that had the imprimatur of the Court of Criminal Appeals stamped upon it, the question was squarely put to rest in *Walker v. State,* 823 S.W.2d 247 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). In that case, a majority of the Court squarely held that the application paragraph contains the entirety of the theory of culpability that the jury is instructed to convict upon and that the sufficiency of the evidence is to be measured against. *Id.* at 248. Although two judges felt that the application paragraph could not incorporate by reference a theory of culpability but rather had to apply the law of the theory to the facts of the case directly and not by reference, a solid majority voted for the holding that the theory of culpability as set out in the application paragraph is the measuring stick in a sufficiency challenge. *Id.* at 249 (Clinton, J. concurring); *Id.* at 254 (Miller, J. dissenting).

█ Thus, theories of culpability need to be set out or incorporated by reference in the application paragraph. Contrast this to, for instance, definitions of elements of an offense, which do not need to be set out in the application paragraph. *Milton v. State,* 652 S.W.2d 958, 959 (Tex.Crim.App.1983); *Harmon v. State,* 889 S.W.2d 521, 524 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (definition of deception, set out in the general instructions to the jury, need not be repeated in the application paragraph of the court's charge.) Again, *Jones,* dealt with *theories of law.*

█ We do not view this *Jones/Walker* doctrine that the sufficiency of the evidence

is to be measured against the application paragraph alone as being a different standard of review from that set out in *Jackson.* It is rather, in our view, the mechanical means by which the *Jackson* standard is to be applied. Thus, as required by *Jackson,* we will look at all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have believed that the evidence established beyond a reasonable doubt the essential elements of the crime. We will look at this evidence under the theory of culpability incorporated and set out in the application paragraph, as required by *Jones/Walker.* With that belief in mind, we will analyze the evidence presented in the case at bar.

█ In this case, Higginbotham was seen by Officer McClain walking away from the tool shed carrying a tool box that Washington identified as having been in his tool shed the night before. Further, Washington identified the tool boxes and tools in Higginbotham's car as also being his. The locked shed had been broken into since the previous night. Higginbotham's explanation that he had paid a person named "Ronnie" for the tools at a Circle K food store, was contradicted by the store clerk who testified that Higginbotham was not talking to anyone at the food store, but rather was chased from the store as Higginbotham was stealing a CB radio and radar detector. The State cites numerous similar courts of appeals cases where similar evidence was held to be sufficient. *See, e.g., Ford v. State,* 860 S.W.2d 731 (Tex.App.—Beaumont 1993, no pet.); *Garza v. State,* 841 S.W.2d 19 (Tex.App.— Dallas 1992, no pet.); *Brown v. State,* 792 S.W.2d 193 (Tex.App.—Houston [1st Dist.] 1990, no pet.); *Marsh v. State,* 800 S.W.2d 607 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). We find the *Marsh* case especially persuasive. There, as here, the defendant was caught "red handed" carrying property away from a broken-into structure and he offered an explanation that was not reasonable. *Marsh,* 800 S.W.2d at 610. The Houston court [14th Dist.] found little difficulty holding the evidence to be sufficient. *Id.*

Here, the application paragraph contained the elements of the offense of burglary and the State's theory that Higginbotham was the perpetrator of the offense, all in relatively "boiler plate" language. Measuring the facts of the case against the application paragraph, we conclude that, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Higginbotham's first point of error is overruled.

■ In his second point of error, Higginbotham complains of the admission, over his objection, of an extraneous offense. After the State rested, Higginbotham testified that he met "Ronnie" outside of the Circle K where "Ronnie" offered Higginbotham some tools for sale. "Ronnie," according to the story, took Higginbotham to the nearby tool shed behind which the tools were stacked and covered by plastic. Higginbotham then left to get the money. When he returned to the Circle K, he gave "Ronnie" $35 and "Ronnie" told him to go to the tool shed and load the tools himself. Higginbotham testified that he then quietly drove off and proceeded to the shed, where he was subsequently arrested. The State, for the express purpose of rebutting this story, was allowed to question Higginbotham about events involving Higginbotham and Moore. Specifically, he was asked:

[PROSECUTOR:] And, in fact, you didn't just drive up and give him $35, you went back into the Circle K, like Mrs.

Moore said, and while she was fixing coffee, you went behind the counter, stole the radar detector, left the place, jumped in your car and tore off. That's what really happened, isn't it?

Higginbotham denied this. In the State's case in rebuttal, the State offered the testimony of Moore for the stated purpose of rebutting the defensive theory testified to by Higginbotham. She testified that a little earlier that day Higginbotham was at the Circle K stealing a CB radio and a radar detector and he was chased away in his car "[leaving] rubber" in the parking lot. She identified the property in Higginbotham's car about the same time Washington was identifying his tools.

In any case where the admission of an extraneous act is challenged, *Rogers v. State*, 853 S.W.2d 29 (Tex.Crim.App.1993), and *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim.App.1990), have become the focal point of analysis. *Montgomery* was the seminal case interpreting Tex.R.Crim.Evid. 401, 402, 403 and 404 concerning the definition of relevant evidence, the admissibility of that evidence, and its exclusion.[1] The case dealt with the role of the trial judge in determining admissibility questions under these rules as well as the role of appellate courts in reviewing a trial judge's decision in that regard.

Under *Montgomery*, trial judges should first, when faced with an offer of evidence, make a Rule 401 inquiry by asking "would a reasonable person, with some experience in the real world believe that the particular

---

1. **Rule 401. Definition of "Relevant Evidence"**
     "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
   **Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible**
     All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissable.
   **Rule 403. Exclusion of Relevant Evidence on Special Grounds**
     Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,

or by considerations of undue delay, or needless presentation of cumulative evidence.
**Rule 404. Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes**
   . . . .
     **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

piece of evidence is *helpful* in determining the truth or falsity of any fact that is of consequence." *Montgomery*, 810 S.W.2d at 376 (emphasis added). Basically the case held that if relevant to some issue of consequence in the case, extraneous conduct is ordinarily admissible and should only be excluded if the trial court finds that the probative value is *substantially* outweighed by the 1) prejudicial effect, or 2) possibility of confusing or misleading, or 3) delay or cumulation. *Id.* at 389 (op. on reh'g); *see* Tex. R.Crim.Evid. 403. This was a significant shift in purpose from the common law rules of evidence that favored exclusion of evidence to the present rules favoring admission of all logically related evidence. Also, the burden to show exclusion is now on the opponent of the evidence, once the proponent shows relevancy. *Montgomery*, 810 S.W.2d at 390. The Court further pronounced that Rule 404(b), titled *Other crimes, wrongs, or acts,* was a specific codification of the Rule 403 balancing test. *Id.* at 389.

Further, the case held that appellate courts should give great discretion to the trial courts in matters of relevancy and prejudicial effect, even to the extent that they are given a limited right to be wrong as long as their decision is not "arbitrary or capricious." *Id.* at 380. A trial court's ruling on admissibility should not be disturbed simply because an appellate judge might decide a question differently than the trial judge.

In *Rogers*, the Court of Criminal Appeals was even more sophisticated in its analysis of these rules. Renaming res gestae evidence as "background" evidence, *i.e.,* background of the criminal act so it could be better understood, the Court elucidated that even if Rule 401 relevancy was established, Rule 404(b) precluded admission of other crimes, wrongs, or acts as background evidence to prove character. *Rogers*, 853 S.W.2d at 32. However, the Court said that they may be admissible to prove a laundry list of things such as motive, opportunity, intent, and identity. This list is not exclusive and in looking for the reason to admit background evidence under Rule 404(b), a trial court must first distinguish between "same transaction contextual evidence," which is evidence of other offenses connected with the primary offense, and "background contextual evidence," which is general background evidence. "Same transaction contextual evidence" is often admitted not because it has any evidentiary value in and of itself, but because in narrating the events of the charged offense, it is impractical to avoid describing this other offense. Necessity is the reason for admitting evidence of the accused's acts, words, and conduct at the time of the offense in "same transaction contextual evidence" questions. In other words, if narration of the primary offense would make little or no sense without bringing the other offenses, then they should be admitted. Otherwise, "background contextual evidence," to be admissible, must have as its justification another reason from the inexhaustible laundry list and that reason must then pass the Rule 403 balancing test as laid out in *Montgomery*.

Turning to the case at hand, the evidence of the theft from the Circle K was clearly admitted to rebut Higginbotham's sole defensive theory. This evidence fits within the inexhaustible laundry list of purposes for which such matters may be admitted under Rule 404(b). As such, its probative value was quite high. Giving great latitude to the discretion of the trial judge in making the Rule 401, 402, 403 and 404(b) call on this evidence, we are constrained to uphold his decision to admit the evidence. Higginbotham's second point of error is overruled.

The judgment of the trial court is affirmed.