COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-515-CR

 

 

KRYSTAL RENA KING                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 362ND
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.
Introduction

 








Appellant Krystal Rena King appeals her
conviction for murder.  A jury found King
guilty and assessed her punishment at fifty years=
confinement, and the trial court sentenced her accordingly.  In fifteen points, King complains that the
trial court erred by admitting extraneous offense evidence, by admitting a
co-conspirator=s statements, by denying King=s
requested accomplice witness charges, and by failing to include a proper
application paragraph in its charge on duress. 
We will affirm.

II.  Factual and Procedural Background

On June 9, 2003, Lake Dallas police
began investigating the disappearance of Denise Johnson.  Four days later, Oklahoma State Bureau of
Investigation agents found Johnson=s body in a field in Oklahoma. 
The body was wrapped in plastic wrap and blankets and partially cemented
inside a large trash barrel.   

The State charged King, Steven
Wiederhold, Scott List, and Tammy Slone with Johnson=s murder.  The State also
charged King, Wiederhold, List, Slone, and Angela Smith with tampering with
evidence, a charge stemming from the transportation and disposal of the
body.  Prior to trial, King=s trial counsel made an oral motion to sever the prosecution of
the two charges against King, and the trial court granted the motion; the State
proceeded to trial on only the murder charge.  









At trial, the State=s evidence showed that King, Wiederhold, List, and Slone conspired
to commit Johnson=s murder and murdered her one evening at her apartment.  Initially, Wiederhold, List, and Slone
attempted to kill Johnson by putting rat poison in her spaghetti.  When this effort was unsuccessful,
Wiederhold, List, and Slone held down Johnson while King suffocated and
eventually stabbed her.  The four
co-conspirators then wrapped the body in plastic wrap and blankets and put it
in the bedroom closet in Johnson=s apartment.  Several days
later, the co-conspirators partially cemented the body inside a large trash
barrel.  They left the body in Johnson=s bedroom closet for twelve days, and during that time they
continued to wrap the body in plastic wrap, putting dryer sheets, baking soda,
and baby powder between the layers of plastic wrap to mask the odor.   

After the murder, King and Wiederhold
went to Thomas Wiley=s house and asked him to help them dispose of the body and of
Johnson=s belongings, but Wiley refused to help.  Later, Wiederhold met Smith on a phone chat
line.  After several conversations and an
in-person meeting at a Chuck E. Cheese restaurant, Wiederhold showed the body
to Smith and requested her help in disposing of the body, allegedly threatening
her life if she did not help.  Smith agreed
to help, and Wiederhold and List loaded the barrel containing the body into a
U-Haul trailer attached to Smith=s truck.  Wiederhold, List,
Slone, and Smith drove the U-Haul trailer to Oklahoma, where they dumped
Johnson=s body by the side of a road. 
King stayed at Johnson=s apartment while the others transported and disposed of Johnson=s body. 








At trial, King testified on her own
behalf that she went along with the murder only because of her fear of
co-conspirator List.  King testified that
List threatened to kill her if she did not kill Johnson.  She testified that she did not go to the
police after the murder because she feared that List would Aget to [her] before the police could get to him.@    

III.  Same Transaction Contextual Evidence

Before and during trial, King=s counsel objected to the admission of any evidence regarding the Apurported attempt to dispose of a deceased body as evidence
against Krystal Rena King.@  Specifically, he objected
under rules of evidence 401 through 404,[1] arguing
that the evidence was not relevant to the murder charge, was inadmissable as
extraneous offense evidence, and was unfairly prejudicial in relation to its
probative value.  Before opening
statements, the following exchange took place between the prosecutor and King=s attorney:

[The Prosecutor]: 
The body that [defense counsel] is referring to is the deceased in this
particular case alleged in the indictment, Denise Johnson, and we=re going to
have to offer evidence of the disposition of that body and the recovery of that
body in proving our case.  We=re also going
to offer evidence of what happened to that body along the way.  And the fact that there are also charges of
tampering with evidence . . . does not, I believe, prevent us from going into
that evidence which proves our case.

 








[King=s
Counsel]:  And my objection would be
furthered by the fact that=s why we did
sever it.  She=s standing
trial for the murder of one Denise Johnson, not with tampering with evidence
after some purposed murder of Denise Johnson. 
We feel that B again,
reurge the 404 objection, as well as the 401 through 403.

 

The trial court overruled these objections. 

The State initially sought to
introduce evidence concerning the co-conspirators= transportation of the body through the testimony of the U-Haul
employee who rented the trailer to Wiederhold and Smith; King=s counsel again objected under rules 401 through 404.  The trial court overruled those objections,
and King=s counsel requested a limiting instruction, which the court also
denied. King continued to object under rules 401 through 404 to all testimony
concerning the events occurring after the murder.  King also objected under rules 401 through
404 to the State=s evidence documenting the events after the murder.  This evidence included photographs of Johnson=s apartment, the barrel containing the body, the location where
the body was found, and the co-conspirators= trip to Oklahoma to dump the body. 

Each of King=s first eight points challenges, in some respect, the trial court=s admission of evidence concerning the events after the murder,
which King contends relates only to the severed tampering with evidence charge.

A.  No AEffective
Denial@ of Severance
Right and

Probative Value Not Outweighed by Prejudicial Effect

 








In her first point, King contends
that although the trial court granted her motion for severance and the State
proceeded to trial on only the murder charge, nonetheless, the trial court
erroneously admitted evidence concerning the events occurring after the murder
that was related to the tampering with evidence charge,[2] thereby
Aeffectively depriving@ her of the right to severance afforded by the Texas Penal
Code.  In her seventh point, King
contends that this evidence was more prejudicial than probative.

A defendant may be prosecuted in a
single criminal action for all offenses arising out of the same criminal
episode.  Tex. Penal Code Ann. ' 3.02(a) (Vernon 2003); see id. ' 3.01 (defining Acriminal episode@ as the commission of two or more offenses that are the repeated
commission of the same or similar offenses). 
Whenever two or more offenses have been consolidated or joined for
trial, the defendant has the right to a severance of the offenses.  Id. ' 3.04(a) (Vernon Supp. 2005). 
The right to severance is absolute, and the granting of a motion for
severance is mandatory.  See Coleman
v. State, 788 S.W.2d. 369, 371 (Tex. Crim. App. 1990).








We review rulings on the
admissibility of evidence under an abuse of discretion standard.  Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997).  As long as the
trial court=s ruling was within the Azone of reasonable disagreement,@ there is no abuse of discretion, and we will uphold the trial
court=s ruling.  See id.  Generally, evidence of other crimes,
wrongs, or bad acts is not admissible during the guilt/innocence phase of the
trial.  Tex.
R. Evid. 404(b).  However,
evidence of extraneous bad acts is admissible when it constitutes Asame transaction contextual evidence.@  Camacho v. State,
864 S.W.2d 524, 532 (Tex. Crim. App. 1993), cert. denied, 510 U.S. 1215
(1994).  Same transaction contextual
evidence is evidence of another crime or act that is so intertwined with the
charged offense that full proof of either crime cannot be had without eliciting
testimony of the other.  Mayes v.
State, 816 S.W.2d 79, 86-87 n.4 (Tex. Crim. App. 1991).  The purpose for admission of same transaction
contextual evidence is not to show character conformity but to help the jury
better understand the nature of the alleged crime.  Camacho, 864 S.W.2d at 532.  The jury has the right to hear evidence
concerning events immediately prior and subsequent to the commission of the
offense so that it may realistically evaluate the evidence.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App.), cert. denied, 532 U.S. 944 (2000).  Thus, the granting of a severance does not
automatically preclude the admission of extraneous offenses that are same
transaction contextual evidence. 








Conversely, in a joint trial of two
or more offenses, when the offenses are intertwined in one inseparable
transaction, all evidence showing the circumstances of the transaction, the
events immediately before and after the event, and the general context of the
offense is admissible and may be fully considered by the jury.  Gibson v. State, 875 S.W.2d 5, 6-7
(Tex. App.CTexarkana 1994, pet. ref=d).  Even when a trial court
erroneously denies a motion for severance, if the offenses are intertwined in
one inseparable transaction, the error is harmless because evidence of one
offense would have been admissible as same transaction contextual evidence in
the separate prosecution of the other offense. 
See, e.g., Tovar v. State, 165 S.W.3d 785, 795 (Tex. App.CSan Antonio 2005, no pet.) (holding severance error, if any,
harmless because the evidence would have been admissible in a separate trial as
same transaction contextual evidence); Dominguez v. State, 62 S.W.3d
203, 208 (Tex. App.CEl Paso 2000, pet. ref=d) (same); see also Matthews v. State, 152 S.W.3d 723, 730B31 (Tex. App.CTyler 2004, no pet.) (holding that, in case dealing with
discretionary severance, trial court did not err by refusing to sever multiple
offenses because, even if the cases had been tried separately, it was probable
that evidence relating to the other offenses would have been admissible to
refute defensive theory); Salazar v. State, 127 S.W.3d 355, 365 (Tex.
App.CHouston [14th Dist.] 2004, pet. ref=d) (same).








In addition to satisfying the
requirements of same transaction contextual evidence, to be admissible,
extraneous offense evidence must also satisfy the balancing test of rule
403.  Tex.
R. Evid. 403; Mayes, 816 S.W.2d at 86-87 n.4.  Generally, although a trial court must still
perform a balancing test to see if the same transaction contextual evidence=s probative value is substantially outweighed by its prejudicial
effect, the prejudicial nature of contextual evidence rarely renders such
evidence inadmissible, as long as it sets the stage for the jury=s comprehension of the whole criminal transaction.  Swarb v. State, 125 S.W.3d 672, 681
(Tex. App.CHouston [1st Dist.] 2003, pet. dism=d).  Under rule 403,
relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403.  A rule 403 analysis by the trial court should
include, but is not limited to, the following considerations:  (1) the probative value of the evidence; (2)
the potential of the evidence to impress the jury in some irrational, indelible
way; (3) the time the proponent needs to develop the evidence; and (4) the
proponent=s need for the evidence.  Erazo
v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).  








In determining whether the danger of
unfair prejudice from photographs substantially outweighs their probative
value, the trial court may consider several factors.  Long v. State, 823 S.W.2d 259, 272 (Tex.
Crim. App. 1991), cert. denied, 505 U.S. 1224 (1992).  They include the number of exhibits offered,
their gruesomeness, their detail, their size, whether they are black and white
or color, whether they are close-up, the availability of other means of proof,
and the circumstances unique to each individual case.  Id. 
Autopsy photographs are generally admissible unless they depict
mutilation caused by the autopsy itself.  See Rayford v. State, 125 S.W.3d 521,
529 (Tex. Crim. App. 2003), cert. denied, 543 U.S. 823 (2004).  








Here, after King objected to the
evidence of the events that followed Johnson=s murder, the trial court was required to determine whether
evidence of those events was relevant to a material issue in the case other
than King=s character and whether the evidence possessed probative value
that substantially outweighed its prejudicial effect.  See
Tex. R. Evid. 403-404; Montgomery v. State, 810 S.W.2d 372,
377-78 (Tex. Crim. App. 1990).  As the
State points out, without evidence of how the co-conspirators transported the
body to Oklahoma and dumped it there, the jury could be confused as to why an
Oklahoma medical examiner, instead of a Texas medical examiner, presented the
autopsy evidence.  Without evidence of
how the co-conspirators wrapped the body in plastic wrap and left it in a
closet for twelve days, the jury would be confused as to why the medical
examiner was unable to determine whether Johnson died from asphyxiation or from
a stab wound; the body was in such a state of decay when the authorities found
it that the cause of death was undeterminable. 
The evidence also explained why authorities suspected a murder had
occurred and how they ultimately unraveled the details of the crime and
discovered the guilty parties.  The
evidence Afills in gaps of the interwoven events and consequences of [the
co-conspirators=] criminal conduct and thus helps the jury to understand the case
in context.@  Prible v. State,
175 S.W.3d. 724, 732 (Tex. Crim. App.), cert. denied, 126 S. Ct. 481
(2005); see Schexnider v. State, 943 S.W.2d 194, 201-02 (Tex. App.CBeaumont 1997, no pet.) (holding evidence of appellant=s dismemberment of victim=s body properly admitted as same transaction contextual
evidence).  








Further, the evidence was probative
to rebut King=s defensive theory that she committed the murder because List
placed her under duress.  The evidence
showed that although King was often alone in Johnson=s apartment during the twelve days after the murder, she did not
go to the police station located fewer than two blocks from Johnson=s apartment.  See Crank
v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (AProbably the most common situation which gives rise to the
admission of extraneous offenses is in rebuttal of a defensive theory.@), disapproved of on other grounds by Alford v. State, 866
S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993); Higginbotham v. State, 919
S.W.2d 502, 506 (Tex. App.CFort Worth 1996, pet. ref=d) (holding that probative value of evidence admitted to rebut
defensive theory was Aquite high@).  Therefore, the evidence
relating to the events after the murder, although also relevant to the
tampering with evidence charge, was likewise relevant to the murder
charge.  See Tex. R. Evid. 403-404; Montgomery,
810 S.W.2d at 377-78.  We hold that the
admission of this evidence did not effectively deprive King of her severance
rights; the evidence was admissible regardless of whether the charges against
her were tried together or separately. 
We overrule King=s first point. 

Moving to King=s argument that the same transaction contextual evidence was more
prejudicial than probative, we note that this evidence did not have a high
potential to impress the jury in some irrational, indelible way in light of the
charged offense, especially considering the fact that the evidence made it
clear that King did not physically participate in transporting or disposing of
the body.  See Erazo, 144 S.W.3d
at 489.  The State did spend a large
amount of time at trial developing this evidence.  See id. 
The State called several witnesses to testify regarding the events
that took place after Johnson=s death, and over half of the 212 exhibits admitted at trial
portrayed the co-conspirators= concealment, transportation, and disposition of the body.  But the State needed the evidence to explain
the physical status of the body when found, the medical examiner=s inability to definitively determine the cause of death, and an
Oklahoma examiner=s involvement in the autopsy. 
See id.   








King specifically points to the
photograph of Johnson=s face in State=s Exhibit 136 as prejudicing the jury, but the State offered this
photograph, taken during the autopsy of Johnson=s body, to show Johnson=s mouth stuffed with paper towelsCa possible cause of death. 
The photograph depicts nothing other than what was testified to at
trial, it directly relates to the medical examiner=s testimony that asphyxiation was a possible cause of death, and
it does not depict any mutilation resulting from the autopsy.  See Rayford, 125 S.W.3d at 529; Long,
823 S.W.2d at 272.  We hold that the
trial court did not abuse its discretion by determining that the probative
value of the same transaction contextual evidence was not outweighed by its
prejudicial effect. 

After considering the required
factors, we conclude that the trial court's decision to admit the same
transaction contextual evidence was within the zone of reasonable disagreement;
therefore, we hold that the trial court did not abuse its discretion.  See  Erazo, 144 S.W.3d at 489 (setting forth
factors);  Santellan, 939 S.W.2d
at 169 (applying abuse of discretion standard). 
We overrule King=s seventh point.    B.  No Error by Refusing to Give a Limiting
Instruction  








In her eighth point, King contends
that the trial court erred by refusing to give the jury a limiting instruction
addressing the same transaction contextual evidence it admitted.  Rule 105 of the Texas Rules of Evidence
requires a limiting instruction, upon proper request, when evidence is admitted
for one purpose but is not admissible for another purpose.  Tex.
R. Evid. 105(a); see also Rankin v. State, 974 S.W.2d 707, 713
(Tex. Crim. App. 1996).  Because evidence
of extraneous acts is admissible for some purposes but inadmissible for others,
on request, the accused is entitled to a mid-trial limiting instruction
addressing extraneous offense evidence.  Rankin, 974 S.W.2d at 711-12.  The trial court is not required, however, to
give a limiting instruction for same transaction contextual evidence.  See Castaldo v. State, 78 S.W.3d 345, 352
(Tex. Crim. App. 2002); Wesbrook, 29 S.W.3d at 114-15; Camacho,
864 S.W.2d at 535. 

Here, we have already determined that
the evidence related to tampering with evidence is same transaction contextual
evidence of the murder, and therefore, the trial court was not required to give
a limiting instruction.  See Castaldo,
78 S.W.3d at 352; Wesbrook, 29 S.W.3d at 114-15; Camacho, 864
S.W.2d at 535.  Accordingly, the trial
court did not err by denying King=s requests for limiting instructions.  We overrule King=s eighth point.

C. 
No Conflict Between Rules of Evidence and Right to Severance








In her fourth point, King contends
that the proper admission of extraneous offense evidence under rules of
evidence 403 and 404(b) conflicts with the right to severance under Texas Penal
Code section 3.04.  King cites no
authority to support her arguments.  See
Tex. R. App. P. 38.1(h).  However, because we have held that the trial
court did not Aeffectively deny@ King=s right to severance by admitting evidence related to the
tampering with evidence charge, King=s argument must fail.  We
hold that the admission of the complained-of evidence did not violate King=s right to severance under the penal code because the evidence was
properly admissible as same transaction contextual evidence.  We overrule King=s fourth point.

D. 
No Violation of Right to Fair and Impartial Trial 








In her second and third points, King
contends that the trial court=s admission of extraneous offense evidenceCthe same transaction contextual evidence concerning the events
after Johnson=s murderCdeprived her of her right to a fair and impartial trial under the
United States and Texas Constitutions. 
In her fifth and sixth points, King contends that the admission of this
evidence, even if proper under rules of evidence 403 and 404(b),  conflicts with her right to a fair and
impartial trial under the United States and Texas Constitutions.  For the same reasons expressed in our
discussion of King=s first point, we hold that the admission of the same transaction
contextual evidence did not deny her a fair and impartial trial.  The properly admitted same transaction
contextual evidence did not offend King=s due process rights.  Prible,
175 S.W.3d at 733.  We overrule King=s second, third, fifth, and sixth points.

IV.  Co-Conspirator=s
Statements Properly Admitted

Three of the state=s witnesses, Thomas Wiley, Angela Smith, and Tammy Slone,
testified regarding statements made by Wiederhold in their presence. Wiley
testified that Wiederhold and King visited him at his home on June 1st.  As Wiederhold explained to Wiley that King
and another woman had been in Aa fight that got out of hand@ and had resulted in the other woman=s death, King interrupted Wiederhold and asked if he was sure that
they could trust Wiley. Wiederhold reassured King, and she eventually
reiterated Wiederhold=s statement that she had been in a fight that had gotten out of
hand.  In King=s presence, Wiederhold explained to Wiley that he had put the
woman=s body in a barrel half full of concrete and requested Wiley=s assistance in dumping the barrel. 








Angela Smith testified that she first
met Wiederhold on June 4th.  On June 6th,
Smith went to Johnson=s apartment, where Wiederhold showed her Johnson=s body, told her that he needed to use her truck to dispose of the
body, and threatened her with death if she refused.  Over the next two days, Smith heard
Wiederhold on the phone with King telling her to wrap the body and to turn the
air conditioner down; on another occasion, Wiederhold instructed Smith to call
King and to tell her to keep wrapping the body in plastic wrap, to turn the air
conditioner down, and to cover the body with a blanket.  Smith testified that Wiederhold instructed
her, List, and Slone to blame the murder on King.

Slone testified that Wiederhold told
her to get rat poison in preparation for Johnson=s murder.  After the failed
attempt to kill Johnson with the rat poison, Wiederhold told List and Slone
that the rat poison did not work and that they should keep Johnson away from
the telephone so that Johnson could not call the hospital.  Wiederhold then told Slone and List that King
was coming over and that he wanted King to do most of the murder because he
wanted it to fall on her if anything happened. 
After King arrived at Johnson=s apartment, Wiederhold told King, Slone, and List to follow him
outside where Wiederhold explained how they were going to kill Johnson.  During trial, King objected to any statements
made by Wiederhold to Wiley, Smith, or Slone, arguing that the statements were
hearsay and violated King=s confrontation rights.  The
trial court overruled King=s objections.

A. 
Co-Conspirator Statements Not Testimonial and Not Hearsay








In her ninth point, King contends
that the admission of Wiederhold=s statements to Wiley, Smith, and Slone violated her confrontation
rights under the Sixth Amendment to the United States Constitution.  The State responds that because Wiederhold
was a co-conspirator and his statements were made in furtherance of the conspiracy,
they were not Atestimonial@ and, therefore, their admission did not implicate the
Confrontation Clause.  In her twelfth
point, King contends that the trial court erred by admitting Wiederhold=s statements in violation of the hearsay rules. The State responds
that the trial court properly admitted the statements as statements made in
furtherance of the conspiracy and as adoptive admissions.

In all state and federal criminal
prosecutions, the accused has a right, guaranteed by the Sixth and Fourteenth
Amendments to the United States Constitution, Ato be confronted with the witnesses against him.@  U.S. Const. amends. VI, XIV; Crawford
v. Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004); Pointer v.
Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069 (1965) (applying the Sixth
Amendment to the states).  In Crawford
v. Washington, the Supreme Court held that the Confrontation Clause bars
the admission of out-of-court testimonial statements made by a witness who does
not testify unless the witness is unavailable to testify and the defendant has
had a prior opportunity to cross-examine the witness.  541 U.S. at 68, 124 S. Ct. at 1374.  Therefore, to implicate the Confrontation
Clause, an out-of-court statement must be (1) made by an absent witness and (2)
testimonial in nature.  See id. at
68, 124 S. Ct. at 1374.








Although the Supreme Court in Crawford
declined to define Atestimonial,@ it recognized that statements made in the following contexts are
indisputably testimonial:  ex parte
testimony at a preliminary hearing, testimony before a grand jury, testimony at
a former trial, and statements derived from police interrogations.  See id. at 68, 124 S. Ct. at 1374.  We review a constitutional legal ruling,
i.e., whether a statement is testimonial or nontestimonial, de novo.  Wall v. State, No. PD-1631-04, 2006 WL
119575, at *6 (Tex. Crim. App. Jan. 18, 2006). 
The legal ruling of whether a statement is testimonial under Crawford
is determined by the standard of an objectively reasonable declarant standing
in the shoes of the actual declarant.  Id.  Generally speaking, a statement is Atestimonial@ if it is a solemn declaration made for the purpose of establishing
some fact.  Russeau v. State, 171
S.W.3d 871, 880 (Tex. Crim. App. 2005) (citing Crawford, 541 U.S. at 51,
124 S. Ct. at 1354), petition for cert. filed, 74 U.S.L.W. 3407 (U.S.
Jan. 3, 2006) (No. 05-856).








Generally, a co-conspirator=s statements made in the furtherance of the conspiracy are
nontestimonial.  See Crawford, 541
U.S. at 56, 124 S. Ct. at 1367 (stating that A[m]ost of the hearsay exceptions covered statements that by their
nature were not testimonialCfor example, business records or statements in furtherance of a
conspiracy@) (emphasis added); Wiggins v. State, 152 S.W.3d 656, 659
(Tex. App.CTexarkana 2004, pet. ref=d) (stating that A[c]o‑conspirator statements made in the furtherance of a
conspiracy are nontestimonial@); see also Mancilla v. State, No. 05-03-00167-CR, 2005 WL
1022451, at *5 (Tex. App.CDallas May 3, 2005, pet. ref=d) (not designated for publication) (holding that statements made
during a meeting to arrange the sale of illegal contraband were nontestimonial
statements by co-conspirators). Wiederhold was a co-conspirator in Johnson=s murder.  Wiederhold=s statements to Wiley, Smith, and Slone, set forth above, were
made in furtherance of the conspiracy to conceal Johnson=s murder.  None of
Wiederhold=s statements were made in the context of a police investigation or
interrogation.  Wiederhold=s statements were not made to a police officer or to a court
official but instead were made to friends in the course of conversations about
how Johnson had purportedly died and about disposing of Johnson=s body.  Consequently, we
hold that Wiederhold=s statements to Wiley, Smith, and Slone are nontestimonial.  See Crawford, 541 U.S. at 68, 124 S.
Ct. at 1374; Wiggins, 152 S.W.3d at 659; see also Mancilla, 2005
WL 1022451, at *5.  Therefore, Crawford
does not bar their admission. 








King nonetheless argues that the
complained-of statements are testimonial because Wiederhold purportedly made
these statements with the belief that they could be later used in trial.  But whether a statement is testimonial under Crawford
is determined by the standard of an objectively reasonable declarant standing
in the shoes of the actual declarant.  Wall,
2006 WL 119575, at *6.  Here, nothing
about the context of Wiederhold=s statements to Wiley, Smith, and Slone would lead an objectively
reasonable witness to believe that the statements would be available for use
later at trial.  See id. at *9
n.45; cf. Moore v. State, 169 S.W.3d 467, 475 (Tex. App.CTexarkana 2005, no pet.) (holding that videotaped statement was
made under such circumstances that an objective witness would have believed it
would be available for later use at trial). 
Accordingly, the trial court did not err by admitting these statements
over King=s complaint that they violated her right to confrontation.  We overrule King=s ninth point. 








King further argues that even if we
conclude that the statements are nontestimonial, we must nevertheless analyze
the admission of these statements under the old standard set forth in Ohio
v. Roberts and reverse her conviction because the statements constituted
hearsay and did not bear sufficient indicia of reliability.  See 448 U.S. 56, 66, 100 S. Ct. 2531,
2539 (1980), abrogated by Crawford, 591 U.S. at 60, 124 S. Ct. at
1369.  Under rule of evidence
801(e)(2)(E), a statement is not hearsay if it is offered against a party and
is a statement made by a co-conspirator Aduring the course and in furtherance of the conspiracy.@  Tex. R. Evid. 801(e)(2)(E).  The out-of-court statement by a
co-conspirator must be more than merely related to the conspiracy; it must
further the conspiracy.  Guidry v.
State, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999), cert. denied, 531
U.S. 837 (2000).  A statement only
furthers a conspiracy if it advances the cause of the conspiracy or serves to
facilitate it.  Guidry, 9 S.W.3d
at 148; see Byrd v. State, No. PD-0235-04, 2005 WL 3408054, at *5
(Tex. Crim. App. Dec. 14, 2005).  A trial
court has discretion to determine the admissibility of statements under the
co-conspirator rule.  Legate v. State,
52 S.W.3d 797, 803 (Tex. App.CSan Antonio 2001, pet. ref=d).








Statements that are made in
furtherance of a conspiracy include those made (1) with intent to induce
another to deal with co-conspirators or in any other way to cooperate with or
assist co-conspirators, (2) with intent to induce another to join the
conspiracy, (3) in formulating future strategies of concealment to benefit the
conspiracy, (4) with intent to induce continued involvement in the conspiracy,
or (5) for the purpose of identifying the role of one conspirator to
another.  Lee v. State, 21 S.W.3d
532, 538 (Tex. App.CTyler 2000, pet. ref=d) (citing Fairow v. State, 920 S.W.2d 357, 362 (Tex. App.CHouston [1st Dist.] 1996), aff=d, 943 S.W.2d 895 (Tex. Crim. App.
1997)).  Conversely, statements that are
not made in furtherance of a conspiracy, and thus remain hearsay, include those
that are (1) casual admissions of culpability to someone the declarant had
individually decided to trust; (2) mere narrative descriptions; (3) mere
conversations between conspirators; or (4) Apuffing@ or Aboasting@ by co-conspirators.  Id.

Another exemption from the hearsay
rules is an adoptive admission.  Tex. R. Evid. 801(e)(2)(B).  A statement offered against a party that is Aa statement of which the party has manifested an adoption or
belief in its truth@ is not hearsay.  Id.;
see also Paredes v. State, 129 S.W.3d 530, 534 (Tex. Crim. App. 2004)
(holding that statements made by co-defendant in defendant=s presence were admissible as adoptive admissions when defendant,
by his actions and responses, showed agreement with statement).  A person=s adoption of a statement may be manifested in actions, responses,
or acquiescence.  Legate, 52
S.W.3d at 802.








Here, Wiederhold=s statement to Wiley that he needed his help disposing of the body
and Wiederhold=s statement to Smith that he needed to use her truck to dispose of
the body were made in furtherance of the conspiracy because Wiederhold made the
statements with the intent to induce Wiley and Smith to assist him and the
other co-conspirators, with the intent to induce Wiley and Smith to join the
conspiracy, and in formulating a future strategy of concealmentCdumping the barrel containing the bodyCto benefit the conspiracy.  See
Lee, 21 S.W.3d at 538 (citing Fairow, 920 S.W.2d at 362).  King argues that these statements were Aat best, statements [made] in furtherance of a new conspiracy to
transport the body,@ but Wiederhold made these statements to Wiley and Smith in order
to conceal evidence that would incriminate the co-conspirators for murder.  See Sherwood v. State, 732 S.W.2d 787,
796 (Tex. App.CFort Worth 1987, no pet.) (noting that conspiracy continued until
all incriminating evidence had been concealed); cf. Byrd, 2005 WL
3408054, at *5 (holding as inadmissible in murder trial a statement made by
appellant=s brother rhetorically asking why appellant had to hit the victim
because statement did not advance objective of later conspiracy to hinder
appellant=s apprehension).

Additionally, Wiederhold=s statements to Smith and King, instructing them  to wrap the body and to turn down the air
conditioner, were also made in furtherance of the conspiracy in formulating a
future strategy of concealmentCmasking the odor until the co-conspirators could dispose of the
body.  See Lee, 21 S.W.3d at 538
(citing Fairow, 920 S.W.2d at 362). 
Wiederhold=s statements to Slone, detailed above, were made for the purpose
of identifying the role of one conspirator to another and in order to formulate
future strategies of concealment to benefit the conspiracy.  See Lee, 21 S.W.3d at 538; Fairow,
920 S.W.2d at 362.  








King argues that Wiederhold=s statement to Wiley regarding how the murder occurredCthat it was a fight that had gotten out of handCwas not made in furtherance of the conspiracy.  As the State points out, however, this
statement falls under the adoptive admissions exception to the hearsay
rule.  See Tex. R. Evid. 801(e)(2)(B). 
Wiederhold, a co-conspirator, made the statement in King=s presence, and Wiley testified that King acknowledged the
statement by Ashaking her head like this.@  See Legate, 52
S.W.3d at 802. Additionally, King further acknowledged Wiederhold=s statement by making the identical statementCthat it was a fight that had gotten out of handClater on in the conversation. 
See id.








We hold that the challenged
statements fall within the co-conspirator statements and adoptive admissions
exceptions to the hearsay rule.[3]  See Tex.
R. Evid. 801(e)(2)(B), (E). 
Although we question the continued viability of the Ohio v. Roberts
standard, even if we were to address King=s claim under that standard, the outcome would be the same because
the complained-of statements fall within the firmly rooted hearsay exceptions
for statements made by a co-conspirator in the furtherance of a conspiracy or
for adoptive admissions.  See Wiggins,
152 S.W.3d at 660.  Accordingly, we hold
that the trial court did not abuse its discretion by admitting the
statements.  Santellan, 939 S.W.2d
at 169.  We overrule King=s twelfth point.

B.  Texas Law does not Grant
Broader Rights

of Confrontation than Federal Law

 

In King=s tenth and eleventh points, she contends that the admission of
Wiederhold=s statements violated her rights to cross-examination and
confrontation guaranteed by the Texas Constitution and the code of criminal
procedure.  See Tex. Const. art. I, ' 10; Tex. Code Crim. Proc.
Ann. arts. 1.05, 1.25 (Vernon 2005). 
The State responds that the Texas Constitution and the code of criminal
procedure do not provide greater protection than the United States
Constitution.  We agree.








Texas courts have declined to apply
the state Confrontation Clause guarantee in a broader manner than the federal
Confrontation Clause guarantee. Murdock v. State, 840 S.W.2d 558, 564
(Tex. App.CTexarkana 1992), vacated on other grounds, 845 S.W.2d 915
(Tex. Crim. App. 1993).  Moreover,
articles 1.05 and 1.25 of the code of criminal procedure do not grant broader
rights of confrontation than the Texas Constitution.  Id.; see Tex. Code Crim. Proc. Ann. arts. 1.05,
1.25.  Accordingly, we overrule King=s tenth and eleventh points and analyze her contention, as we have
done above, under the Sixth Amendment only. See Murdock, 840 S.W.2d at
564. 

V.  Requested Accomplice Witness Charges Properly
Denied 

After both sides rested, but before
the court read the charge to the jury, King requested that the trial court
instruct the jury that Slone and Smith were accomplices as a matter of law and
that, therefore, the testimony of one could not be used to corroborate the
testimony of the other.  King filed
proposed instructions relating to her requests: 
the first two proposed instructions, entitled AAccomplice Witness as a Matter of Law,@ instructed the jury that Slone and Smith were accomplices as a
matter of law, and the third proposed instruction instructed the jury that
Slone and Smith were multiple accomplice witnesses who could not corroborate
each other.  The trial court included a charge
that Slone was an accomplice witness, but it denied King=s other two requested charges. 

In her thirteenth and fourteenth
points, King contends that the trial court erred by denying her requested
accomplice witness charge as to Angela Smith and by denying her requested
multiple accomplice witness charge regarding the corroboration of both Slone=s and Smith=s testimony.  The State
responds that the trial court did not err by denying both requested charges
because Smith was not an accomplice to the murder. 








Appellate review of error in a jury
charge involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731-32.        A person is an accomplice if he participates with the
defendant before, during, or after the commission of a crime with the required
culpable mental state.  Paredes,
129 S.W.3d at 536.  The participation
must involve an affirmative act that promoted the commission of the offense
with which the accused is charged.  Id.  Mere presence during the commission of the
crime, knowledge about the crime and failure to disclose it, or even
concealment of the crime is not sufficient to render a person an
accomplice.  Medina v. State, 7
S.W.3d 633, 641 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102
(2000).  A witness=s complicity with the accused in the commission of a different,
but related, offense does not make her an accomplice to the crime for which the
accused is on trial.  Creel v. State,
754 S.W.2d 205, 213 (Tex. Crim. App. 1988). 
An accomplice as a matter of law is one who is susceptible to
prosecution for the offense with which the accused is charged or a lesser
included offense.  Paredes, 129
S.W.3d at 536.  








The trial court is under no duty to
instruct the jury regarding accomplice witnesses unless there exists no doubt
or the evidence clearly shows that a witness is an accomplice as a matter of
law.  Id.  If the evidence presented by the parties
conflicts concerning whether the witness is an accomplice, then the trial court
must leave to the jury the question of whether the inculpatory witness is an
accomplice as a matter of fact under instructions defining the term Aaccomplice.@  Id.  

In this case, the evidence clearly
shows that Smith=s only connection to the charged offense was in concealing the
crime.  See Medina, 7 S.W.3d at
641.  Smith took no part in planning or
committing the murder; in fact, she did not even meet the co-conspirators to
the murder until after the murder had been committed.  She was thus not an accomplice as a matter of
law because she was not subject to prosecution for the murder or a lesser
included offense.  See Paredes,
129 S.W.3d at 536.  Additionally, Smith=s complicity with Wiederhold, List, Slone, and King in the
commission of the different, but related, offense of tampering with evidence
does not make her an accomplice to the murder for which King was on trial.  See Creel, 754 S.W.2d at 213.  








King concedes that Athere is ample support for the proposition that even participating
in the concealment of the body or complicity in other crimes for which a
defendant is charged does not make one an accomplice witness.@ However, she contends that had the offenses of murder and
tampering with evidence been tried together, she would have been entitled to a
charge instruction that Smith was an accomplice as a matter of law.  But King moved for and obtained a severance
so that these two offenses would not be tried together.  And we have already held that the trial court
did not Aeffectively deny@ King=s right to severance by admitting evidence related to the
tampering with evidence charge as same transaction contextual evidence.  Smith was not an accomplice witness in King=s murder prosecution, so Smith=s testimony did not require corroboration under article 38.14 of
the code of criminal procedure.  See
Munoz, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993).  Slone was the only accomplice to testify at
trial, and therefore, the court=s charge correctly excluded a charge concerning corroboration of
multiple accomplice witnesses. 

We hold that the trial court did not
err by refusing to instruct the jury that Smith was an accomplice witness or by
refusing to charge the jury concerning multiple accomplice witnesses.  We overrule King=s thirteenth and fourteenth points.

VI.  Alleged Improper Application Paragraph Did
Not Harm King

King submitted a proposed instruction
on duress to be included in the court=s charge, including the following application paragraph:








Now, therefore, if
you find from the evidence beyond a reasonable doubt that the defendant did
commit the offense of murder, either acting alone or as a party as herein
defined, as alleged in the indictment and hereinbefore defined in this charge,
but you further find by a preponderance of the evidence that Scott List had threatened
to kill the defendant if she did not participate in said murder, and that Scott
List=s threats were such threats of force as would render a person of
reasonable firmness incapable of resisting the pressure, and that the
defendant, Krystal Rena King, was in fear of imminent loss of her life or
serious bodily injury [in] the hands of Scott List if she did not participate
in the murder and that, so believing, she did participate therein, then you
will acquit the defendant and say by your verdict ANot Guilty.@ 

The court agreed to charge the jury on duress, but it
refused to submit King=s requested application paragraph and instead included the
following:

Now, therefore, if you find from the evidence beyond a
reasonable doubt that the defendant did commit the offense of murder, either
acting alone or as a party as herein defined, as alleged in the indictment and
previously defined in this charge, but you further find by a preponderance of
the evidence that the defendant engaged in the proscribed conduct because she
was compelled to do so by the threat of imminent death or serious bodily injury
to herself or another, then you will acquit the defendant and you will find the
defendant not guilty. 

 

Immediately preceding this application paragraph, the
court instructed the jury that

duress is an
affirmative defense to prosecution for any offense.  It is an affirmative defense if the person
charged engaged in the proscribed conduct because she was compelled to do so by
the threat of imminent death or serious bodily injury to herself or
another.  Such compulsion exists only if
the force or threat of force would render a person of reasonable firmness
incapable of resisting that pressure.

 








The burden of proof of the affirmative defense of duress
rests upon the defendant.  To establish
such defense, the defense must prove it by a preponderance of the evidence.  APreponderance
of the evidence@ means the
greater weight and degree of the credible evidence in the case.

 

The defense of duress is unavailable if the actor
intentionally, knowingly, or recklessly placed herself in a situation in which
it was probable that she would be subjected to compulsion. 

 

In closing arguments, both sides made arguments based on
King=s alleged fear of List. 

In her fifteenth point, King argues
that the trial court erred by failing to include her proposed duress
application paragraph in the charge; she claims that she was harmed by this
error.  Specifically, King argues that because
the trial court failed to name List as the person King feared, A[t]he jury very easily could have gotten confused in examining the
charge on duress and might have applied that law to whether Wiederhold had
threatened force rather than recalling [King=s] testimony that she was fearful because of actions or threats by
List.@ 








The function of the jury charge is to
instruct the jury on the law applicable to the case.  Dinkins v. State, 894 S.W.2d 330, 339
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995).  A trial court=s charge to the jury must include not only an abstract statement
of the law but also an application of the law to the facts in the case.  Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2005); Gray v. State,
152 S.W.3d 125, 127-28 (Tex. Crim. App. 2004); Williams v. State, 622
S.W.2d 578, 579 (Tex. Crim. App. [Panel Op.] 1981).  When reviewing the charge for alleged error,
we examine the charge as a whole, considering the relationship between the
abstract and application portions of the charge.  See Caldwell v. State, 971 S.W.2d 663,
666 (Tex. App.CDallas 1998, pet ref=d).  When the trial court
includes an application paragraph in its charge, the likelihood of jury
confusion is low even though the application given was incomplete.  Oliver v. State, 685 S.W.2d 54, 56
(Tex. Crim. App. 1985).  








Here, the record is replete with
references to King=s alleged fear of List.  On
direct and cross-examination, King testified that she feared List.  Both sides questioned several witnesses
regarding whether List was prone to violence and whether King had ever
mentioned to them that she feared List, and both sides discussed King=s alleged fear of List in their closing arguments.  In fact, the only defensive theory relied on
by King was that she participated in the murder because List placed her under
great duress.  See id.  Thus, there could have been no
misunderstanding regarding who allegedly placed King under duress.  See id.; see also Green v. State, 930
S.W.2d 655, 658 (Tex. App.CFort Worth 1996, pet. ref=d) (explaining that when application paragraph on law of parties
failed to identify parties other than appellant, the jury could not have been
confused based on the evidence, the abstract law given to the jury, and the
arguments of counsel).

Reviewing the application portion of
the jury charge in conjunction with the entire jury charge, the state of the
evidence, the arguments of counsel, and other relevant information instructions,
as we must, we hold that the jury could not have been confused about who formed
the basis of King=s defensive theory of duress. 
See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on reh=g) (holding that the actual degree of harm must be assayed in
light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and
any other relevant information revealed by the record of the trial as a whole@); see also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim.
App. 2000).  Accordingly, we hold that
King was not harmed by the trial court=s failure to include List=s name in its charge on duress. 
We overrule King=s fifteenth point.








VII.
Conclusion

Having overruled King=s fifteen points, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

PANEL B:   LIVINGSTON, GARDNER, and WALKER, JJ.

 

PUBLISH

 

DELIVERED:
March 16, 2006











[1]See Tex.
R. Evid.
401-404.





[2]King also claims that
testimony that she used profanities toward a young child should not have been
admitted because it Ahad no relevant purpose
other than to paint [King] as a rotten person.@  King did not object to this testimony; thus,
any error is not preserved for our review. 
See Tex. R. App. P. 33.1(a)(1).





[3]King argues that even if
we hold that the statements are admissible as co-conspirator statements, we
should still consider the reliability of those statements instead of deferring
to a Ablanket rule@ that all statements made
in furtherance of a conspiracy are inherently reliable.  King argues that Muttoni v. State
supports her contention, but that case dealt with the statements against penal
interest exception.  See 25 S.W.3d
300, 306B07 (Tex. App.CAustin 2000, no
pet.).  And Aany inherent
unreliability that accompanies co-conspirator statements . . . is per se
rebutted by the circumstances giving rise to the long history of admitting such
statements.@  Lilly v. Virginia, 527 U.S. 116, 137,
119 S. Ct. 1887, 1900 (1999).